UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
**ADEJUMOKE OGUNLEYE**, as Parent and Natural
Guardian of **D.O**., and **ADEJUMOKE OGUNLEYE**,
Individually, et al.

                    Plaintiffs,                    23-cv-09092 (VSB)

     -against-

**DAVID C. BANKS**, in his official capacity as
Chancellor of the New York City Department of
Education; **NEW YORK CITY DEPARTMENT
OF EDUCATION;** and **BRAD LANDER**, in his
official capacity as Comptroller of the City of
New York,

                  Defendants.
-------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Rory J. Bellantoni, Esq. (RB 2901)
Brain Injury Rights Group, Ltd.
*Attorneys for Plaintiffs*
300 East 95th Street, #130
New York, New York 10128
rory@pabilaw.org

## <u>TABLE OF CONTENTS</u>

*Page(s)*

TABLE OF AUTHORITIES ...................................................................................... i

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................. 3

   **I.**     **THE IDEA'S STAY-PUT PROVISION SUPPORTS TIMELY
FUNDING, AND THE PLAINTIFFS' CLAIM IS JUSTIFIED** ....................... 3

   **II.**    **PLAINTIFFS SATISFY THE TRADITIONAL FACTORS
FOR A PRELIMINARY INJUNCTION** ...................................................... 6

         **A.**  **Plaintiffs have shown a likelihood of success on the merits** ..................... 6

         **B.**  **Plaintiffs have shown irreparable harm that is actual and imminent** .......... 8

   **CONCLUSION** ................................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

***Page(s)***

<u>**Federal Cases**</u>

*Abrams v. Carranza,*
 No. 20-CV-5085 (JPO), 2020 WL 6048785 (S.D.N.Y. October 13, 2020) ...............................4

*De Paulino v. N.Y.C. Dep't of Educ.,*
 959 F.3d 519 (2d Cir. 2020) .........................................................................................................9

*Mendez v. Banks,*
 65 F.4th 56 (2d Cir. 2023) ...............................................................................................4, 5, 6, 7

## PRELIMINARY STATEMENT

Plaintiffs submit this Reply Memorandum of Law in support of their motion for a preliminary injunction to address the arguments made by Defendants David C. Banks and the New York City Department of Education ("DOE"). First, concerning the timing of filing this action, Defendants write that Plaintiffs 'sprinted to the federal court' yet again." [ECF No. 19, p. 4]. This is a mischaracterization of the matter, and Plaintiffs have only acted timely in this matter to protect the rights of the students, D.O., H.C., and A.F. These Student-Plaintiffs have Pendency Orders[1] issued by the Impartial Hearing Officers at their respective administrative proceedings, and now Plaintiffs are taking the necessary steps in line with enforcing those Orders.

Furthermore, while Defendants, in their opposition, reference two prior actions[2] from this District Court, it is essential to note that any relief granted at the administrative level, unfortunately, lacks enforceability without the necessary judicial intervention at the Federal level. Defendants' non-compliance with these administrative orders has necessitated this action, not any arbitrary rush by Plaintiffs. Additionally, the assertion that Plaintiffs have either not submitted necessary documents or have done so only recently is misleading. Plaintiffs have been cooperative and have provided all relevant documentation as required. Any delay in processing payment cannot be placed on the shoulders of Plaintiffs. Defendants allege the DOE is "actively taking steps to implement each of the Pendency Orders or Agreements during the pendency of the proceeding" [ECF No. 19, p. 5]. Plaintiffs have yet to see any evidence of progress or results.

---

[1] As stated in Plaintiffs' Complaint [ECF No. 1], Student-Plaintiff's D.O. and A.F. received Pendency Order's at the Administrative level issued by Impartial Hearing Officers. At the time of filing this complaint, Student-Plaintiff, H.C. had only received a Pendency Implementation Form issued by the DOE agreeing that H.C.'s pendency placement rests at iBRAIN. Since filing, H.C. has received a Pendency Order and FOFD relative to the 2023-2024 SY. Plaintiffs filed a Notice of Intention to Seek Review with the State Review Office for H.C. regarding the Pendency Order issued on October 20, 2023, which continues H.C.'s Pendency until a final order is issue.

[2] Grullon v. Banks, No. 23-CV-5797 (JGLC) (S.D.N.Y. Oct. 19, 2023); *See* also, Frias v. Banks, No. 23-CV-5803 (JGLC), 2023, U.S. Dist. LEXIS 183794, (S.D.N.Y. Oct. 12, 2023).

The primary purpose of Plaintiffs' request for Preliminary Injunction is to prevent imminent irreparable harm to the Student-Plaintiffs here because the DOE does not comply with administrative orders. Defendants argue the risk of harm is speculative based on the language of the letters from Sisters Transportation and Travel LLC ("Sisters"). Yet it is much more than speculative. The mathematical equation for what is happening here is simple. Sister's has operating costs— represented by an X. Where the DOE has not funded the Students' transportation—each Student's transportation—the amount of money to be applied to Sister's operation costs is $0 for each Student. Finally, X is greater than ($0 + $0 + $0). X is greater than $0. There is nothing speculative about Sister's having to suspend operations if its funding does not equal or exceed its operating costs.

As indicated by the letters attached to Plaintiffs' Complaint, the possibility of disruption in transportation services to these students has grave implications for the Student-Plaintiffs education and well-being. The language "may no longer be able to provide your child with transportation services" explicitly signifies an imminent risk of irreparable harm. [ECF No. 1–4, 1–8, 1-1–12 To suggest that a 30-day window transforms this clear threat into mere speculation is to trivialize the potential disruption and harm to the student's pendency placement. While Defendants claim any harm to these Students is "speculative", they know, but fail to disclose to the Court, that substantial tuition is outstanding for the Student-Plaintiffs' pendency placements/programs at iBRAIN, putting the school in jeopardy of suspending its services. Along with the Students here, the DOE has failed to pay over $4 million in tuition costs based on more than 30 students' pendency placements/programs at iBRAIN.[3]

On October 19, 2023, after Plaintiffs filed their Complaint here, Plaintiffs' Counsel was notified of this other pressing matter. Chris Whalen, CPA, iBRAIN's accountant, copied Plaintiffs'

---

[3] Indeed, Plaintiffs may consider amending the Complaint to include other students who have pendency orders/agreements finding iBRAIN is their last agreed-upon educational placement/program for pendency funding.

Counsel with a letter he sent to the DOE's Impartial Hearing Order Implementation Unit, explaining that iBRAIN, each Student-Plaintiffs pendency placement/program was in a significant financial dilemma. In his letter, Whalen delineated the unpaid tuition and related service balances for over thirty students whose current educational placements are at iBRAIN. Whalen cautioned that if Defendants do not address their responsibilities and pay the overdue balances by October 26, 2023, iBRAIN may be required to notify students' parents that their child's educational program may be unavailable after November 1, 2023.[4]

As of now, the DOE is egregiously overdue with its pendency payment obligations for the students, with a staggering amount of over $3,876,392.65 for over thirty Student-Plaintiffs at iBRAIN. Breaking down this sum further for the students as it relates to the 2023–2024 school year ("SY"): for student D.O., there is an outstanding amount of $153,161.84. While, thankfully, the DOE has met its obligations to H.C. regarding tuition for the 2023–2024 school year, A.F. has yet to receive $138,905.84. Whalen's warning cannot be brushed off as speculative harm.

Plaintiffs are not acting out of haste, but out of a genuine concern for the rights and well-being of the students here. Defendants have an obligation to comply with the Pendency Orders and Pendency Implementation Forms, and any delay or non-compliance can harm the students, as seen here. As such, Plaintiffs respectfully urge the Court to grant their application for a preliminary injunction in its entirety.

## ARGUMENT

## I.   THE IDEA'S STAY-PUT PROVISION SUPPORTS TIMELY FUNDING, AND THE PLAINTIFFS' CLAIM IS JUSTIFIED.

Defendants' reliance on § 1415(j) of the Individuals with Disabilities Education Act ("IDEA") in opposition to Plaintiffs' request for the funding they are entitled to before their private

---

[4] A copy of Whalen's letter will be provided to the Court at the hearing on October 27, 2023.

placements/programs must close their doors, oversimplifies the provision's intent and purpose. Even though the Second Circuit in *Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023), found that "nothing in the text" of § 1415(j) compels the DOE to immediate funding for educational placements, the IDEA aims to prioritize the well-being and continuous educational advancement of the child. Therefore, any delay in funding ignores the purpose of IDEA.

While § 1415(j) might not explicitly mandate an "automatic fast-track" for funding, it emphasizes maintaining the child's current educational placement throughout all administrative proceedings. This emphasis acknowledges the significance of consistent, uninterrupted education, which is intrinsically tied to timely funding. Defendants rely heavily on *Mendez* in making their arguments and justifying their actions, but fail to inform this Court that the Second Circuit has opened the door for Student-Plaintiffs, such as those here, to seek an order directing immediate payment or reimbursement **if they show that a delay or failure to pay has jeopardized their child's educational placement.** *Mendez*, 65 F.4th at 63. Given that each of the Student-Plaintiffs in this matter faces losing their transportation service, and their placement is poised to be shut down due to the DOE's delay, the Student-Plaintiffs are entitled to an Order that would protect their placement at iBRAIN.

Further, Defendant's mention of administrative documentation as a hurdle is mentioned by the Second Circuit in *Abrams v. Carranza*, No. 20-CV-5085 (JPO), 2020 WL 6048785, at *2 (S.D.N.Y. October 13, 2020), *aff'd sub nom. Abrams v. Porter*, No. 20-3899-CV, 2021 WL 5829762 (2d Cir. December 9, 2021). Yet it is essential to differentiate between "reasonable documentation requirements" and unwarranted bureaucratic delays. Plaintiffs have provided all documentation necessary for funding in a timely and efficient manner. While the DOE may demand certain documents to process payments, it is the agency's duty to ensure that these processes do not

4

unnecessarily impede the timely execution of a Pendency Order. The DOE is ordered to fund the Students' Pendency Placements—the DOE is ordered to ensure that the Students' Pendency Placements are funded. Yet, it "sits back", taking no action to secure the documents needed to fulfill its obligations. It merely rejects document after document until we end up here.

The assertion that the DOE only recently received "some" of the necessary documentation is misleading. The records indicate that the DOE began receiving the essential documents as early as August 9, 2023. This provides the DOE ample time to process and ensure timely funding of the students' educational needs. The lack of a single transportation affidavit, as suggested by Defendant, should not serve as a roadblock to funding the broader educational requirements. While the IDEA's stay-put provision might not expressly provide a timeline for funding, its overarching intent is clear– ensuring the uninterrupted education of the child. Even clearer is the Court in *Mendez,* which created a way for Student-Plaintiffs to protect their pendency placement when there is a threat of immediate harm endangering their pendency placement.

Plaintiffs seek enforcement because the DOE's administrative processes have put these students' placements at risk. Again, the Second Circuit has held that Parents or guardians are entitled to obtain automatic, injunctive relief under § 1415(j), directing the DOE to immediately pay or reimburse their child's educational expenses at their pendency placement/program if they establish that the DOE's delay or failure to fund such pendency placement/program has jeopardized their child's educational placement. *Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023). In such circumstances, § 1415(j) requires the DOE to automatically *fast-track* pendency funding for the child's educational placement/program—to ensure the child's placement/program is not jeopardized. *Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023).

As discussed above, as well as in Plaintiffs' Complaint and original Memorandum of Law, the DOE's delay and failure to fully fund each Student-Plaintiff's educational placement/program here, as well as over 30 other students at iBRAIN (totaling over $ 4 million in outstanding "tuition"—and more in outstanding transportation and nursing) has placed the Student-Plaintiffs' (and all students there) pendency placements/programs in jeopardy—they are at risk of closing, suspending services, scaling back operations, furloughing employees and more—all of which would prevent the students from continuing to attend their last agreed-upon educational placements/programs while they litigated the appropriateness of their IEPs for the current (2023–2024 school year). As such, each Student-Plaintiff here is entitled to an automatic/preliminary injunction requiring the DOE to *fast-track* funding for their pendency placements/programs—to accelerate payment and/or reimbursement—without regard to the traditional preliminary injunction factors. *See Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023).

## II.    PLAINTIFFS SATISFY THE TRADITIONAL FACTORS FOR A PRELIMINARY INJUNCTION

Plaintiffs have met the criteria necessary for a preliminary injunction. Plaintiffs have provided proof of the likelihood of success on merits and evidence of imminent and irreparable harm.

### A.    Plaintiffs have shown a likelihood of success on the merits.

While DOE acknowledges that each of the Student-Plaintiffs here, D.O., H.C., and A.F., are entitled to pendency funding, it focuses on what it does not have to pay, what it need not pay, what rides should NOT be paid for, rather than what it can or should pay. DOE withholds all payment, at times, based on the most specious arguments. DOE does not attempt to reconcile the Parties' differences in the understanding and interpretation of the costs associated with the Student-Plaintiffs educational placements/programs despite administrative orders directing them to pay the costs.

Defendant's contentions concerning these costs are incorrect. Referencing the Pendency Implementation Form that Defendants themselves cite, it states:

> Transportation: "…round-trip door-to-door special education transportation services to enable the Student's attendance at the Private School… via lift-bus ambulance, with a 1:1 nurse present during transportation, and oxygen or a ventilator (or both), air conditioning, and with as reasonably limited travel time as possible, the cost of which shall be paid in accordance with the terms of the contract entered into evidence, provided that the rate shall not exceed $345.00 per trip…" (see pg. 24–25 of FOFD in DPC 228745).

The language from this agreement explicitly ties the DOE's pendency obligation to the terms of the transportation contract. The details of that contract state,

> The PARTIES agree all SERVICES will be billed at an annual rate of $166,770.00, hereinafter referred to as "FEES". CLIENT shall pay FEES with three payment installments: Payment 1: $27,795.00 due on July 5, 2023, Payment 2: $55,590.00 due on September 1, 2023, and a final payment, Payment 3 $83,385.00 due on January 1, 2024." The total amount due under the contract as of January 1, 2024, is indeed $83,385.00, thus negating the Defendant's claims surrounding the questionable amount.

Thus, the balance claimed of $83,385.00 for the 2023–2024 school year, as cited by Plaintiffs, is correct.

Defendants cite *Mendez* and argue that "§ 1415(j) does not create a procedural right to immediate payment at least not absent a showing that a child's placement will be put at risk."[5] [ECF No. 19, p. 11]. But where delay directly jeopardizes the child's educational placement[6], this argument does not hold. Moreover, attempting to downplay the urgency implied in the letters from Sisters Travel based on semantics overlooks the tangible repercussions these potential disruptions have on students, their families, and their educational placements.

---

[5] *Mendez*, 65 F.4th at 64.
[6] Again, the *Mendez* Court expanded on this to say "if [Plaintiff's] show that a delay or failure to pay has jeopardized their child's educational placement." *Mendez*, 65 F.4th at 63.

Defendants' counterpoints fail to overshadow the broader issue when analyzed along with the details of the contracts and commitments. The crux of this case is ensuring that the Students with disabilities are not denied their right to a continuous free appropriate public education, which has already been ordered or agreed to, because of the DOE's failure to fund their programs—and its penchant for raising administrative and financial roadblocks. Roadblocks that the DOE creates to delay or evade payment of the pendency placements for these Student-Plaintiffs and many others. Such harm is not only exemplified here in Plaintiffs' Complaint and exhibits attached thereto, but it is exemplified in the letter Chris Whalen (iBRAIN's CPA) sent to the DOE's Impartial Hearing Order Implementation unit, Plaintiffs' counsel, and the NYC Law Department, among others, detailing the amounts owed for numerous students at iBRAIN regarding tuition for the 2023–2024 SY.

### B.    Plaintiffs have shown irreparable harm that is actual and imminent.

Defendants' argument that Plaintiffs have failed to show imminent harm is entirely disingenuous. In fact, Defendants simply do not believe that the Student-Plaintiffs will suffer any harm if disenrolled from their current educational placements/programs. There is evidence that shows that the Students may lose their pendency placements if they are not funded soon. The stress, the anxiety, the uncertainty that the City, the DOE, puts these families through, along with thousands of others, is unconscionable. These families are suffering now. Do we need to wait until the Students' school closes to find they are entitled to an injunction? An actual closure would not be speculative, but irremediable.

Defendants argument that the letters from Sister's are speculative and reliant on nonpayment within 30 days is an oversimplification. The letters signal genuine financial strain on the transportation service provider, which affects the Students, and their families. It is not mere

speculation when the company that transports the Student-Plaintiffs to and from their current educational placement/program informs the Parent-Plaintiffs that it may not continue to do so without payment for outstanding balances. Balances that have been outstanding for some time. That Sister's has allowed Plaintiffs to carry their outstanding balances, and his now calling in those balances does NOT signal corporate prosperity. It does NOT instill confidence. It does NOT instill "peace of mind," serenity, calm. Instead, it causes anxiety, stress, fear, turmoil, and unrest for Plaintiffs and their disabled children. Much like an employer telling its employees that it may no longer be able to provide them with a paycheck if profits do not increase within the next 30 days, causes stress, anxiety, fear, turmoil, and rest. There are no happy feelings because layoffs are merely speculative.

Defendants reference to the balances being "unsupported by documentation"[7] is misleading. Plaintiffs have provided all relevant documentation to the appropriate agencies to implement the pendency funding. Contrary to Defendants' suggestion, Plaintiffs have adhered to all procedural prerequisites. Furthermore, the attempt to discredit the urgency of the situation by highlighting the affiliations between Sisters Travel, iBrain, and the law firm representing Plaintiffs is a red herring. Defendants state:

> An interruption of the student-plaintiff's schooling would require the action of a third party, Sisters Travel, who is not before the court, but notably founded by a relative of iBrain's founder and the founder of the law firm representing the Plaintiffs in this action. See *De Paulino v. N.Y.C. Dep't of Educ*., 959 F.3d 519, 529 (2d Cir. 2020) (noting an allegation that Peter Donohue became the founder and registered agent of iBrain and that Donohue is the founder of the Brain Injury Rights Group, the law firm representing the Parents in these tandem cases and the other plaintiffs seeking public funding from the City for iBrain's tuition and related services.)

[ECF No. 19, p. 12–13]. Mr. Donohue is not a party to this action, and discussing any affiliation between these organizations is a distraction meant to derail funding for the Student-

---

[7] ECF No. 19, p. 13.

Plaintiffs already established pendency placement. Citing this information is irrelevant. Rather than addressing the genuine concerns surrounding transportation services, Defendants are directing the Court's attention to affiliations irrelevant to the core issues.

Finally, the claim that the harm is speculative rather than actual lacks merit. For special needs students, the mere prospect of interrupted services presents real and immediate educational and emotional challenges. To suggest that harm is not "irreparable" until services have been completely halted is a misguided understanding of the nature of specialized education. Plaintiffs have provided the necessary documentation and highlighted a threat to their continued education that establishes irreparable harm. Defendant's arguments fail to engage with the actual lived realities of the Plaintiffs and the harm they face.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs request the Court issue an Order requiring Defendants to fund each Plaintiff's pendency placement/program at iBRAIN, including special transportation, tuition, related services, and nursing where applicable, pursuant to each Student's pendency order, pendency implementation agreement/form and/or other agreement; granting Plaintiffs reasonable attorneys' fees and costs, along with such other, further, and different relief that the Court may deem just, proper, and equitable.

Dated:    October 26, 2023
          New York, New York                  Respectfully submitted,


                                              _/S/_____
                                              Rory J. Bellantoni, Esq. (RB 2901)
                                              Brain Injury Rights Group, Ltd.
                                              *Attorneys for Plaintiffs*
                                              300 E. 95ᵗʰ Street, #130
                                              New York, New York 10128
                                              rory@pabilaw.org