CASE NUMBER: 242435

## <u>FINDINGS OF FACT AND DECISION</u>

Case Number: 242435

Student's Name: ███████

School District: New York City Department of Education

Hearing Requested by: Parent

Request Date/Date Complaint Filed: November 17, 2022

Date(s) of Hearing: January 13, 2023
       February 15, 2023
       March 24, 2023
       April 24, 2023
       April 25, 2023

Actual Record Closed Date: May 30, 2023

Date of Decision: May 30, 2023

Date of Distribution if Different than Decision Date: N/A

Hearing Officer: Jean Marie Brescia, Esq.

Hearing Officer's Findings of Fact and Decision
Case No. 242435

**NAMES AND TITLES OF PERSONS WHO APPEARED ON January 13, 2023**

<u>For the Student:</u>
John Henry Olthoff, Esq.
Angelo Lagman, Law Clerk
Zach Zylstra, Law Clerk

<u>For the Department of Education:</u>
Andrew Bressner, Esq.

**NAMES AND TITLES OF PERSONS WHO APPEARED ON February 15, 2023**

<u>For the Student:</u>
John Henry Olthoff, Esq.

<u>For the Department of Education:</u>
Andrew Bressner, Esq.

**NAMES AND TITLES OF PERSONS WHO APPEARED ON March 24, 2023**

<u>For the Student:</u>
John Henry Olthoff, Esq.
Angelo A. Lagman, Law Clerk
Lianneth Fadell, Interpreter

<u>For the Department of Education:</u>
Andrew Bressner, Esq.

**NAMES AND TITLES OF PERSONS WHO APPEARED ON April 24, 2023**

<u>For the Student:</u>
John Henry Olthoff, Esq.
Marlene Frias, Parent
Lianneth Fadell, Interpreter

<u>For the Department of Education:</u>
Andrew Bressner, Esq.

**NAMES AND TITLES OF PERSONS WHO APPEARED ON April 25, 2023**

<u>For the Student:</u>
John Henry Olthoff, Esq.
Tiffany Semm, Director of Special Education, iBrain

<u>For the Department of Education:</u>
Andrew Bressner, Esq.

Hearing Officer's Findings of Fact and Decision
Case No. 242435

## **INTRODUCTION AND PROCEDURAL HISTORY**

This matter comes before the undersigned Impartial Hearing Officer ("IHO") on Parent's Due Process Complaint ("DPC") filed on or about November 17, 2022. Ex. A.[1]  On January 11, 2023, I was appointed by the New York City Department of Education to hear this matter.  Parent alleges that the Department failed to offer a free appropriate public education to ███ and seeks reimbursement for tuition and the costs of related services and a paraprofessional for ███ at the International Academy for the Brain ("iBrain") for a portion of the 2021-2022 12-month school year and the entirety of the 2022-2023 12-month school year. Ex. A at 1, 9.  ███ parents also seek funding for specialized transportation with paraprofessional support and an independent neuropsychological evaluation for ███ Ex. A at 9.

I conducted a prehearing conference on January 13, 2023.  Counsel appeared on behalf of the Parent and on behalf of the Department.  Counsel clarified in detail the relief requested, and there was discussion of Parent's request for an independent educational evaluation ("IEE").  The hearing was scheduled for February 15.

On February 15, the parties presented their arguments with respect to the IEE, and I issued an Interim Order granting an IEE for the reasons set forth in the Interim Order.

On March 24, counsel for the Parent reported that the IEE had been completed and that the CSE had recently reconvened, and procedural and evidentiary issues were discussed.  The hearing was continued to April 24 in order for the parties to have the opportunity to review the IEE and prepare their cases.

On April 24, counsel for the Department stated that the Department was not presenting the testimony of any witnesses, that the Department was resting its case, and that the Department was waiving its "Prong I position."  Tr. 80.  Department exhibits 2 through 4 and 6 through 16 were admitted in evidence.  Parent's exhibits A through C were admitted in evidence.  Tr. 89.  Parent's counsel presented an opening statement, and ███ mother testified.

The hearing continued and was completed on April 25 with the testimony of the director of special education of iBrain.  Counsel presented closing statements on the record.

---

[1] Exhibits shall be referred to as follows: Parents' Exhibits are designated by a letter; Department's Exhibits are designated by a number; and Impartial Hearing Officer's Exhibits are designated as "IHO."

Hearing Officer's Findings of Fact and Decision
Case No. 242435

The parties requested extensions of the compliance date, and a written Orders of Extension was issued on January 13, February 15, March 24 and April 24, 2023. The reasons for granting the extension are set forth in the Order.

The record was closed on May 30, 2023, upon formal admission of Parent's Exhibits E and G through O.[2]

## JURISDICTION

The due process hearing was held, and a decision in this matter is now rendered pursuant to the Individuals with Disabilities Education Act (hereinafter, "IDEA"), 20 U.S.C. § 1400 et seq., and its implementing regulations, 34 C.F.R. Part 300, and the New York State Education Law, Educ. Law § 4404, and its implementing regulations, 8 NYCRR Part 200.5.

▇▇▇▇▇ mother consented to the hearing being conducted by videoconference and to transmission of this decision by email.

## ISSUES

Parent requests funding for tuition and related services costs at iBrain and for costs of transportation. At the hearing, the Department did not defend its IEPs or proposed placement for ▇▇▇▇▇ The issues to be resolved are:

1. Was iBrain an appropriate unilateral parental placement for ▇▇▇▇▇ for the 2022-2023 school year?

   a. What does the record reveal about ▇▇▇▇▇ special educational needs?

   b. What does the record reveal about iBrain's program for ▇▇▇▇▇

   c. Does the "totality of the circumstances" demonstrate that iBrain's program for ▇▇▇▇ is reasonably calculated to address her special education needs?

2. Does the balance of the equities favor ▇▇▇▇▇ parents?

3. Does the record support school district funding for transportation?

---

[2] According to the Hearing Officer's notes, these exhibits were admitted in evidence on April 25. The transcript does not reflect that these exhibits were so admitted. On the consent of the Department via email on May 30, I admitted Parent's Exhibits E and G through O and made then part of the record in this matter.

Hearing Officer's Findings of Fact and Decision
Case No. 242435

## **FINDINGS OF FACT**

1.  ████████ is a nine year-old girl who is eligible for special education and services pursuant to the IDEA and whose disability, for the purposes of the IDEA, is classified as multiply disabled.  Ex. 3.

2.  ████████ has been diagnosed with Pierre Robin Syndrome, a condition which causes malformations in a child's jaw and other structures of the mouth.  Exs. 4 at 3, L, N at 2. As an infant, she received a G-tube and underwent jaw surgery to correct some of the symptoms related to Pierre Robin Syndrome; Ex. 4 at 3.  She receives all of her nutrition through a GJ-tube. Ex. 3 at 5.

3.  ████████ has a history of epilepsy and diagnoses of intellectual disability (severe), severe mixed receptive/expressive language disorder, autism spectrum disorder (severe), and asthma. Exs. L, N at 2, 12.

4.  ████████ presents with global delays that impact all areas of development, including cognition, communication, social-emotional, physical, and academic functioning. Ex. 10 at 2.  She scores below the first percentile in all domains assessed on the Vineland-3.  Ex. 10 at 6.

5.  ████████ is nonverbal and has a very limited attentions span. Tr. 140; Ex. N at 7-8.  She is not toilet trained and requires adult assistance in all areas of daily living activities.  Tr. 102-103; Ex. 3 at 12-15.

6.  ████████ can walk with some independence but needs adult assistance for navigation and safety. Tr. 140.

7.  ████████ attended preschool at Saint Mary's Hospital for Children.  Ex. 16.

8.  ████████ has attended Department District 75 12:1:1 and 12:1:4 programs from kindergarten through April 2022.  Exs. 7, 8, 12, 13,

9.  ████████ started the 2021-2022 school year at the Department's Walter Damrosch School, P.186X. Tr. 94.

10. ████████ parents became concerned about the level of care that ████████ was receiving at the school; ████████ was coming home with soiled clothing and diapers and a dirty face. Tr. 94-95.  She was not learning.  Tr. 101.

Hearing Officer's Findings of Fact and Decision
Case No. 242435

11. There were too many students in the class, and the school did not provide a paraprofessional for ███ Tr. 95.

12. ███ mother enrolled ███ in iBrain, and ███ attended as of April 5, 2022. Tr. 95; Ex. B at 1.

13. iBrain is a nonpublic, not-for-profit special education school enrolling children with brain injuries or brain-based disabilities; many of the students are nonverbal and nonambulatory. Tr. 128.

14. There are 62 students enrolled in the school. Tr. 152.

15. ███ mother entered into an enrollment contract with iBrain. Tr. 96. As per the terms of the enrollment contract (Ex. C):

   a. The "Pro Rated Base Tuition" for ███ for the period from April 5 through June 24, 2022 was $30,508.93, which includes the costs of academic programming, a 1:1 paraprofessional and school nursing services and which does not include the costs of related services.

   b. The "Supplemental Tuition" for ███ includes the costs of "related services programming calculated at a rate of $104 per hour for individual treatment and $52 per hour for therapy in group settings."

   c. ███ "related services programming," for which iBrain is charging separately from tuition charges, includes: individual occupational therapy (four 60-minute sessions per week); group occupational therapy (one 60-minute group session per week); individual physical therapy (three 45-minute sessions per week); individual speech and language pathology (four 60-minute sessions per week); group speech and language pathology (one 60-minute session per week); individual vision education services (two 60-minute sessions per month); individual assistive technology services (two 60-minute sessions per week); individual music therapy (two 60-minute sessions per week); group music therapy (one 60-minute session per week); and parent counseling and training (one time per month); for a total cost, as per the terms of the contract, of $18,610.80.

   d. The contract obligates ███ mother to pay the above tuition and related services programming amounts.

Hearing Officer's Findings of Fact and Decision
Case No. 242435

16. ▮▮▮ mother also entered into a transportation contract with a transportation company to provide transportation for ▮▮▮ between her home and iBrain. ▮▮▮ mother is obligated to pay for the services rendered by the transportation company should she not prevail in this proceeding. Ex. G.

17. On April 25, 2022, ▮▮▮ mother attended an IEP meeting; she disagreed with the Department's recommendations for ▮▮▮ including the related services, the assistive technology, and the class size of 12:1:4. Department personnel also informed ▮▮▮ mother that a place was not available at the school for ▮▮▮ and that ▮▮▮ mother could "try back in September" to see if a place was available then for ▮▮▮ Tr. 95; Exs. 2, 3 at 37-39, Ex. 4 at 5.

18. The Department also recommended special transportation for ▮▮▮ specifically bus transportation from the closest safe curb to school and a 1:1 bus paraprofessional. Ex. 3 at 35.

19. ▮▮▮ mother, through counsel, submitted a ten-day notice letter to the Department on or about March 23, 2022, informing the Department of her intention to place ▮▮▮ in iBrain and seek funding from the Department. Ex. 6.

20. ▮▮▮ mother entered into an enrollment contract with iBrain. As per the terms of the enrollment contract (Ex. C):

   a. The "Pro Rated Base Tuition" for ▮▮▮ for the period from April 5 through June 24, 2022 was $30,508.93, which includes the costs of academic programming, a 1:1 paraprofessional and school nursing services and which does not include the costs of related services.

   b. The "Supplemental Tuition" for ▮▮▮ includes the costs of "related services programming calculated at a rate of $104 per hour for individual treatment and $52 per hour for therapy in group settings."

   c. ▮▮▮ "related services programming," for which iBrain is charging separately from tuition charges, includes: individual occupational therapy (four 60-minute sessions per week); group occupational therapy (one 60-minute group session per week); individual physical therapy (three 45-minute sessions per week); individual speech and language pathology (four 60-minute sessions per week); group speech

Hearing Officer's Findings of Fact and Decision
Case No. 242435

and language pathology (one 60-minute session per week); individual vision education services (two 60-minute sessions per month); individual assistive technology services (two 60-minute sessions per week); individual music therapy (two 60-minute sessions per week); group music therapy (one 60-minute session per week); and parent counseling and training (one time per month); for a total cost, as per the terms of the contract, of $18, 610.80.

    d. The contract obligates ████ mother to pay the above tuition and related services programming amounts.

21. ████ mother also entered into a transportation contract with a transportation company to provide transportation for ████ between her home and iBrain. ████ mother is obligated to pay for the services rendered by the transportation company should she not prevail in this proceeding. Ex. G.

22. ████ completed the 2021-2022 school year at iBrain. Exs. B, O.

23. ████ mother, through counsel, submitted another ten-day notice letter to the Department on or about June 17, 2022, informing the Department of her intention to place ████ in iBrain for the 2022-2023 12 month school year and seek funding from the Department. Ex. G.

24. ████ mother entered into an enrollment contract with iBrain for the 2022-2023 12-month school year. As per the terms of the enrollment contract (Ex. I):

    a. The "Base Tuition" for ████ for the period from July 6, 2022 through June 23, 2023 was $175,000.00, which includes the costs of academic programming, a 1:1 paraprofessional and school nursing services and which does not include the costs of related services.

    b. The "Supplemental Tuition" for ████ includes the costs of "related services programming calculated at a rate of $112 per hour for individual treatment and $56 per hour for therapy in group settings."

    c. ████ "related services programming," for which iBrain is charging separately from tuition charges, includes: individual occupational therapy (four 60-minute sessions per week); individual physical therapy (three 60-minute sessions per week); individual speech and language pathology (five 60-minute sessions per

Hearing Officer's Findings of Fact and Decision
Case No. 242435

week); individual vision education services (two 60-minute sessions per month);
individual assistive technology services (one 60-minute session per week);
individual music therapy (two 60-minute sessions per week); group music therapy
(one 60-minute session per week); and parent counseling and training (one time per
month); for a total cost, as per the terms of the contract, of $82,521.60.

    d.  The contract obligates ███ mother to pay the above tuition and related services
programming amounts.  Ex. I.

25. ███ mother also entered into a transportation contract with a transportation company
to provide transportation for ███ between her home and iBrain.  ███ mother is
obligated to pay for the services rendered by the transportation company should she not
prevail in this proceeding.  Ex. J.

26. Tiffany Semm, a New York State certified general and special education teacher, is the
director of special education at iBrain.  Tr. 127-128.

27. All of the students in the school required the assistance of a 1:1 paraprofessional; about
half the students also have  1:1 nurse.  Tr. 129.  Almost all the students utilize an assistive
technology devices.  Tr. 129.

28. iBrain provides the related services of speech, occupational and physical therapies, music
therapy, assistive technology services, services for the deaf and hearing of hearing, and
vision education services.  Tr. 129.  Most related services are provided in 60-minute
sessions due to the students' significant deficits.  Tr. 132-134.  Related services are
provided on both pull-out and push-in bases.  Tr. 158.

29. There are eight students (including ███ in ███ class with one teacher and one
classroom assistant.  Tr. 140.  In this class, ███ has peers with whom she can practice
social and communication skills, and, as a result, she is motivated to reach out to her peers
and communicate with them.  Tr. 141.

30. ███ needs a small class because she becomes "easily overwhelmed" and then does not
engage in learning tasks.  Tr. 143.

31. ███ has a 1:1 paraprofessional for safety and ADLs.  ███ has "no safety awareness"
and would be unable to navigate the school building safely; she also needs adult assistance
for all ADLs, including toileting, and to monitor her G-tube.  Tr. 148-149.  The

Hearing Officer's Findings of Fact and Decision
Case No. 242435

paraprofessional also redirects ███ to maintain attention, including during related services sessions. Tr. 149.

32. The iBrain school nurse is available to ███ as needed for supervision of G-tube feeding and to reconnect the G-tube when it becomes dislodged by ███ Tr. 150-151.

33. In order to learn, ███ needs a "direct instruction approach" and one-to-one time with a teacher who can implement techniques to focus ███ attention and ensure that she is attending to the information that is presented to her. Tr. 142, 145.

34. ███ needs multisensory instruction to engage her in learning. 142-143.

35. ███ receives 30 minutes per day of 1:1 direct instruction from her classroom teacher; the remainder of the classroom instructional time is spent in small group instruction. Tr. 145-146, 168.

36. The 30 minutes per day of 1:1 direct instruction targets ███ specific goals. Tr. 146.

37. Small group instruction includes time for some "push-in" related services during which the student is participating in academic work and incorporating in those therapeutic skills as well in the classroom. Tr. 146, 166, 168-169.

38. iBrain personnel develop an "iBrain IEP" for each student, and each student is provided with individualized programming and instruction. Tr. 137, 163, 170-171.

39. The IEP development process involves "intake evaluations" of the student and meetings to discuss those evaluations and formulate recommendations for the student. Tr. 137-138. The document is finalized after the student is enrolled in the school, and school staff have had opportunities to observe the student with his classmates and teachers. Tr. 138-139.

40. The iBrain IEP for ███ dated April 23, 2022 (Ex. B) notes that ███ had adapted to her new school and class and was already showing progress in participating in group activities, including morning meeting, by seeking out classmates for positive peer interactions, and by responding to related services. Ex. B at 1.

41. The iBrain IEP includes a section labelled "Measurable Annual Goals." There are goals listed in the areas of attending to academic instruction; improving comprehension of stories; utilizing her AAC device to participate in read-alouds; identifying colors; using the AAC device to communicate with peers and adults and to participate in games with peers; following directions; responding to her name; utilize a total communication approach to

Hearing Officer's Findings of Fact and Decision
Case No. 242435

make requested and choices; improve oral-motor awareness, decreased sensitivity, and swallowing; jumping; navigating stairs; holding and using art tools such as markers and paint brushes; improved body awareness and coordination; ADLs, including handwashing, dressing, toileting and safety awareness; operating the AAC device; participation in musical instrument play; increase communication skills through responding to prompts during music therapy; . Ex. B at 21-33.

42. The iBrain IEP includes the following recommendations (see Ex. B 37-38): individual occupational therapy (four 60-minute sessions per week); group occupational therapy (one 60-minute group session per week); individual physical therapy (three 45-minute sessions per week); individual speech and language pathology (four 60-minute sessions per week); group speech and language pathology (one 60-minute session per week); individual vision education services (two 60-minute sessions per month); individual assistive technology services (two 60-minute sessions per week); individual music therapy (two 60-minute sessions per week); group music therapy (one 60-minute session per week); and parent counseling and training (one time per month).

43. iBrain personnel developed an updated "iBrain IEP" for ███████ for the 2022-2023 12-month school year. Ex. O at 38-50. This IEP includes updated goals in the areas of attending to academic instruction; visual attention; improving comprehension of stories; utilizing her AAC device to participate in read-alouds; identifying colors; using the AAC device to communicate with peers and adults and to participate in games with peers; following directions; responding to her name; utilize a total communication approach to make requested and choices; improve oral-motor awareness, decreased sensitivity, and swallowing; jumping; navigating stairs; holding and using art tools such as markers and paint brushes; improved body awareness and coordination; ADLs, including handwashing, dressing, toileting and safety awareness; operating the AAC device; participation in musical instrument play; increase communication skills through responding to prompts during music therapy; . Ex. B at 21-33.

44. The focus of ███████ program has been on building her attentions span, baseline academic skills and use of an AAC device. Tr. 140.

Hearing Officer's Findings of Fact and Decision
Case No. 242435

45. ███ has benefited from music therapy; it helps her learn to sustain her attention and to build some fundamental communication skills, including responding to prompts to build on her conversational skills and making choices. Tr. 147.

46. ███ has made progress at iBrain since April 2022: her attention and communication skills have improved; her aggressive behaviors have diminished. She goes off to school in the morning happy, rather than crying. Tr. 97-98. Specifically, ███ has (Tr. 140, 147-147, 164-165; Ex. O):

   a. Increased her attention to instruction;

   b. Learned to follow some simple directions;

   c. Learned to use the AAC to select answers and responses;

   d. Learning to use the AAC device to answer "WH" questions;

   e. Holding markers and paint brushes to participate in classroom activities;

   f. Matching and identifying colors;

   g. Descending and ascending stairs;

   h. Participation in small group activities;

   i. Needing reduced support during small group activities;

   j. Improved social skills (greeting peers, answering questions from peers and adults using the AAC device, engaging with peers);

   k. Made slow and steady progress on speech and language goals; and

   l. Started to assist with dressing herself and washing her hands.

47. In light of the family's income, ███ mother is unable to pay iBrain tuition at this time. Tr. 98.

48. The IEE ordered in this case was conducted in February and March 2023. Ex. N. With respect to this evaluation (Ex. N at 7-9, :

   a. ███ was "unable to complete any of the formal and most of the informal tasks" relating to testing;

   b. ███ attention was "significantly deficient for non-preferred activities;"

   c. ███ demonstrated "significant deficits" in following instructions, sequencing, and problem solving;

Hearing Officer's Findings of Fact and Decision
Case No. 242435

    d.   Her receptive vocabulary could not be assessed, and she did not use her AAC in a meaningful manner during the evaluation;

    e.   ██████ adaptive functioning is severely impaired;

    f.   The evaluator recommended that ██████ remain at iBrain because it was providing her with the individualized instruction and intensive related services that she requires to address her needs.[3]

## <u>CONCLUSIONS OF LAW</u>

A board of education may be required to pay for education services obtained for a child by the child's parents if the services offered by the board of education were inadequate or inappropriate, the services selected by the parents were appropriate, and equitable considerations support the parents' claim.  <u>School Committee of the Town of Burlington v. Department of Education</u>, 471 U.S. 359 (1985).  The fact that the school or the educational and related services selected by the parents are not approved as a school for children with disabilities by the State Education Department (as in the instant case) is not dispositive of the parents' claim for tuition reimbursement.  <u>Florence County School District v. Carter</u>, 510 U.S. 7 (1993).

The central purposes of the IDEA are to ensure: (1) that students with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living and (2) that the rights of students with disabilities and their parents are protected.  20 U.S.C. §1400(d)(1)(A); <u>Schaffer v. Weast</u>, 546 U.S. 49, 51 (2005); <u>Board of Education v. Rowley</u>, 458 U.S. 176, 179-181 (1982).

The first step in the inquiry is to determine whether the school district offered a free appropriate public education to the student.  <u>See</u>, <u>e.g.</u>, <u>Application of a Child with a Disability</u>, Appeal No. 07-008; <u>Application of a Child with a Disability</u>, Appeal No. 06-121.  A free appropriate public education includes special education and related services designed to meet the student's individual needs, provided in conformity with a written IEP.  See 20 U.S.C. §1401(9);

---

[3] I discount the recommendation of the evaluator that ██████ continue to attend iBrain because he appears to have an affiliation with iBrain.  See Ex. N at 15 (iBrain email address).  Any affiliation with iBrain should have been disclosed by counsel prior to my ordering the IEE in this matter.

Hearing Officer's Findings of Fact and Decision
Case No. 242435

20 U.S.C. §1414(d). A school district offers a student a free appropriate public education when (1) it complies with the procedural requirements of the IDEA and (2) the IEP developed by the district is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F. v. Douglas Cty. Sch. Dist. RE-1, 137 S. Ct. 988, 999 (2017); see also Rowley, 458 U.S. at 207; T.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 151, 160 (2d Cir. 2014); R.E. v. New York City Dep't of Educ., 694 F.3d 167, 189-90 (2d Cir. 2012). A school district offers a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." Rowley, 458 U.S. at 203. The school district also must ensure that "[t]o the maximum extent appropriate, children with disabilities are educated with children who are not disabled" that is, in the student's least restrictive environment. 20 U.S.C. § 1412(a)(5)(A); 8 NYCRR 200.1(cc), 200.6(a)(1); see M.W. ex rel. S.W. v. New York City Dep't of Educ., 725 F.3d 131,143 (2d Cir. 2013).

The particular educational needs of a student with a disability and the services required to meet the needs must be set forth in a written IEP. Honig v. Doe, 484 U.S. 305, 311 (1988); 20 U.S.C. § 1401(9)(D); see 20 U.S.C. § 1414(d); 34 C.P.R. § 300.320. An appropriate educational program begins with an IEP that accurately reflects the results of evaluations to identify the student's needs. 34 C.F.R. 300.320 (a)(1); 8 N.Y.C.R.R. 200.4(d)(2). The CSE then must establish annual goals related to the identified needs of the student and provide for the use of appropriate special education services in the IEP. 8 N.Y.C.R.R. 200.4(d)(2)(iii), (v).

In New York, the school district bears the burden of proof in an impartial hearing, except that a parent seeking tuition or services reimbursement for a unilateral placement, or services selected by the parent, has the burden of proof regarding the appropriateness of such placement, programming or services. N.Y. Educ. Law § 4404(1)(c); see R.E., 694 F.3d at 184-85. In this case, the Department did not present testimony with respect to its provision of FAPE to ▇▇▇ for the 2021-2022 and 2022-2023 school years, and the Department conceded that it had not met its "prong I" burden under Burlington and Carter.

**Is iBrain an appropriate placement for ▇▇▇**

▇▇▇ parents bear the burden of proof concerning the appropriateness of iBrain's program for ▇▇▇ See, e.g., Frank G. v. Bd. of Educ. of the Hyde Park Cent. Sch. Dist., 459 F. 3d 356, 364 (2d Cir. 2006), cert. denied, 128 S.Ct. 169 (2007). To meet this burden, ▇▇▇

Hearing Officer's Findings of Fact and Decision
Case No. 242435

parents must show that the educational services provided by iBrain addressed ███ identified special education needs.  See C.F. v. New York City Dep't of Educ., 746 F.3d 68, 82 (2d Cir. 2014); C.L. v. Scarsdale Union Free Sch. Dist., 744 F.3d 826, 837 (2d Cir. 2014); R.E., 694 F.3d at 187; G.B. and L.B. on behalf of N.B. v. Tuxedo Union Free Sch. Dist., 09-CV-859 (S.D.N.Y Sept. 30, 2010); Application of the Bd. of City School District of the City of New York, Appeal No. 95-79, at pp. 6-7; Application of a Child with a Disability, Appeal No. 96-1.  The Second Circuit instructs that:

> No one factor is necessarily dispositive in determining whether parents' unilateral placement is "reasonably calculated to enable the child to receive education benefits." Rowley, 458 U.S. at 207.  Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs . . . . To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential.  They need only demonstrate that the placement provides "educational instruction specially designed to meet the unique needs of a handicapped child; supported by such services as are necessary to permit the child to benefit from instruction."

Frank G., 459 F. 3d at 364 (emphasis added); also  Bd. of Educ. of the Wappingers Cent. Sch. Dist. v. D.M., 831 F. App'x 29, 78 IDELR 2 (2d Cir. 2020) (Summary Order).

Furthermore, as the Second Circuit held in R.E.: "parents may provide evidence that the child made actual progress at their chosen private placement to support the adequacy of that placement."  694 F.3d at 187 n.3.

The preponderance of the evidence establishes that iBrain's program provided ███ with an educational program in which her complex constellation of identified  and significant special education needs was addressed for both the last few months of the 2021-2022 school year and the 2022-2023 12-month school year.  In particular, the record is clear that ███ needed the individualized instruction and programming, support of a full-time 1:1 paraprofessional for mobility, safety and ADLs, and the extensive and intensive related services that iBrain school personnel provided to her.  As the iBrain documents and Ms. Semm's testimony explained in detail, ███ needs 60-minute sessions of related services, with those services provided on both push-in and pull-out bases, and iBrain provides such related services.  ███ also needs support

Hearing Officer's Findings of Fact and Decision
Case No. 242435

for, and teaching with respect to the use of assistive technology. iBrain provides ████ with these supports and services. See paragraphs 28 through 45 above. In addition, at iBrain, music therapy is an appropriate service for ████ and, as a related service that is a component of iBrain's integrated program for ████ is reimbursable. See, e.g., Application of a Student with a Disability, Appeal No. 22-056 at pp. 14-15.

████ has made progress, in light of her unique set of challenges and circumstances, during the brief period of attendance at iBrain as of the time of the hearing. See paragraph 46 above. The evidence demonstrates that iBrain provides her with an appropriate special education program. See, e.g., T.K. v. New York City Dep't of Educ., 810 F.3d 869, 878 (2d Cir. 2016) (unilateral program appropriate when it meets child's needs and child makes progress); F.B. v. New York City Dep't of Educ., 132 F. Supp. 3d 522, 555-56 (S.D.N.Y. 2015) (unilateral program appropriate when it provided instruction and related services individualized to child's needs and which resulted in progress); see also, e.g., Application of a Student with a Disability, Appeal No. 22-002 at pp. 16-19 (prong II burden met when testimony of school witness describes how school's program addresses student's individual needs); Application of a Student with a Disability, Appeal No. 21-063 at pp. 14-16 (same); Application of a Student with a Disability, Appeal No. 21-056 at pp. 18-22 (same).

Considering the "totality of the circumstances" as required by the Second Circuit in Frank G., the evidence supports a finding that iBrain's educational and related services programming is appropriate for ████ As a result, ████ parents prevail with respect to the second Burlington/Carter criterion.

**Does the balance of the equities favor ████ parents?**

With respect to the third Burlington criterion, whether equitable considerations support ████ parents' claims, the evidence establishes that ████ mother cooperated with the Department by placed ████ in Department programs starting in kindergarten, attending CSE meetings, and providing the requisite statutory notice. See, e.g., R.E., 694 F.3d at 185, 195; M.F. v. New York City Dep't of Educ., 2013 U.S. Dist. LEXIS 79181 at *34-*35 (S.D.N.Y. June 4, 2013) ("equitable considerations" include parental cooperation with the school district, attending CSE meetings, and providing notice to the school district).

Hearing Officer's Findings of Fact and Decision
Case No. 242435

As to reimbursement for specialized transportation for ███ (a) there can be no dispute that ███ needs specialized transportation to and from school; (b) given ███ safety and mobility challenges, specialized transportation to enable her to access an educational program is costly; and (c) the evidence consists of a transportation contract that obligates ███ parent to pay for transportation expenses. As per a number of SRO decisions, these factors constitute sufficient evidence to warrant public funding for transportation where the school district has failed to offer or provide specialized transportation to a student. See, e.g., Application of a Student with a Disability, Appeal No. 22-056 at pp. 12-13; Application of a Student with a Disability, Appeal No. 22-002 at pp. 20-21;

███ parent seeks direct payment to iBrain and to the transportation company. As the federal courts have made clear, such direct payment is appropriate when (a) equitable considerations favor an award of tuition and/or services costs, and (b) the student's parents, though legally obligated to make payments for tuition and/or services costs, have not made such payments because they do not have the financial ability to do so. Connors v. Mills, 34 F. Supp. 2d 795 (N.D.N.Y. 1998); Mr. and Mrs. A. v. New York City Department of Education, 769 F. Supp. 2d 403, 428-429 (S.D.N.Y. 2011). ███ parent has demonstrated that she has an obligation to pay tuition, services and transportation costs. There is a recent decision from the Southern District, which is precedent controlling in this matter, holding that proof in inability to pay is not necessary. See Ferreira v. New York City Dep't of Educ., 22 Civ. 4993 (S.D.N.Y. March 14, 2023). Thus, an analysis and a ruling on ███ parents' inability to pay is neither necessary nor appropriate.

Hearing Officer's Findings of Fact and Decision
Case No. 242435

Equitable considerations thus favor the award of relief to ██████ parents.  As a result, ██████ parents prevail with respect to the third <u>Burlington/Carter</u> criterion.

## **<u>ORDER</u>**

Based upon the above Findings of Fact and Conclusions of Law, it is hereby ORDERED that:

The Department of Education shall fund for ██████ the costs of tuition and related services at iBrain and the costs of specialized transportation for ██████ between home and iBrain, for the time period from April 5, 2022 through June 24, 2022 and for the 2022-2023 12-month school year.

**SO ORDERED.**

DATED: May 30, 2023

*Jean Marie Brescia*
Jean Marie Brescia, Esq.
Impartial Hearing Officer

## **<u>NOTICE OF RIGHT TO APPEAL</u>**

**Within 40 days of the date of this decision, the parent and/or the Public-School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.**

**If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.**

**An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed.  An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations**

Hearing Officer's Findings of Fact and Decision
Case No. 242435

of the Commissioner of Education.  A copy of the rules in Part 279 and model forms are
available at http://www.sro.nysed.gov.

### DOCUMENTATION ENTERED INTO THE RECORD

### PARENT'S EXHIBITS

| PARENT EXHIBIT | DATE | DESCRIPTION | NUMBER OF PAGES |
|---|---|---|---|
| A | 11/17/2022 | Due Process Complaint – IH # 242435 | 10 |
| B | 04/23/2022 | iBRAIN IEP | 39 |
| C | 03/25/2022 | iBRAIN Enrollment Contract | 8 |
| E | 06/07/2022 | Transportation Agreement | 5 |
| G | 06/17/2022 | Ten Day Notice | 2 |
| I | 06/16/2022 | iBRAIN Enrollment Contract | 14 |
| J | 06/16/2022 | Transportation Agreement | 6 |
| K | 04/26/2022 | Educational Records Request | 2 |
| L | 03/29/2022 | Medical Accommodation Forms | 10 |
| M | 04/25/2022 | DOE IEP | 50 |

Hearing Officer's Findings of Fact and Decision
Case No. 242435

| N | 03/20/2023 | Neuropsychological Evaluation | 17 |
|---|---|---|---|
| O | 03/23/2023 | iBRAIN IEP | 56 |

## DEPARTMENT'S EXHIBITS

| Number | Document | Date | Number of Pages |
|---|---|---|---|
| 2 | Prior Written Notice | 06/21/2022 | 19 |
| 3 | Individualized Education Program (IEP) | 04/25/2022 | 39 |
| 4 | Meeting Minutes | 04/25/2022 | 5 |
| 6 | Ten Day Notice | 03/23/2022 | 2 |
| 7 | Prior Notice Package | 03/11/2021 | 10 |
| 8 | Individualized Education Program (IEP) | 03/03/2021 | 28 |
| 9 | Prior Written Notice: Reevaluation | 02/11/2021 | 11 |
| 10 | Vineland-3 | 02/08/2021 | 9 |
| 11 | Request for Reevaluation | 01/27/2021 | 2 |
| 12 | Prior Written Notice | 01/26/2021 | 10 |
| 13 | Individualized Education Program (IEP) | 01/19/2021 | 21 |
| 14 | Speech Language Referral | 11/01/2020 | 1 |
| 15 | Social History Update | 03/06/2019 | 2 |
| 16 | Classroom Observation | 02/13/2019 | 2 |

### L.V. v. NYC Department of Education, 03 Civ. 9917 (SDNY)

Parents of children with Individualized Education Programs who received or who may receive an order at the conclusion of an impartial hearing should read the attached notice about possible disclosure of information and documents about their children as part of a federal court litigation.

Translations in Spanish, Arabic, Bengali, Chinese, French, Haitian Creole, Korean, Russian, and Urdu are available on the DOE webpage at https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings

**Notice of Potential Disclosure of Student Education Records**

**Please read this notice carefully**. This is a message about possible disclosure of documents or data that might contain information about your child, if your child has been classified as a student with a disability and has been or may be the subject of a final Impartial Hearing Order.

**I.      Nature of the Lawsuit**

This lawsuit challenged the failure of the Department of Education ("DOE") of the City of New York to timely implement orders issued by impartial hearing officers in connection with impartial hearings held pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* and N.Y. Education Law § 4401, *et seq.* In 2007, the parties entered into a Stipulation of Settlement (the "Stipulation") in which the DOE agreed to timely implement these orders.

In January 2021, the Court granted plaintiffs' motion for the appointment of a special master. On April 14, 2021, the Court entered an Order appointing David Irwin of Thru-Ed as the Special Master.  On May 14, 2021, the Court entered an Order detailing the duties and authority of the Special Master which include, among other things, the authority to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders a. Pursuant to this Order, the Special Master may have access to education records of students, upon DOE's compliance with the Family Education Rights and Privacy Act (20 U.S.C. § 1232g; 34 C.F.R. Part 99) ("FERPA").

## II.    Data Ordered to Be Disclosed

In order for the Special Master to perform his duties, the Court has directed the DOE to provide the Special Master (and employees and consultants at Thru-Ed) with access to records containing confidential student record information, including, but not limited to, documents submitted in the impartial hearing process, impartial hearing orders, data about compliance, and students' special education documents, such as individualized education programs, evaluations, authorizations, invoices, etc. The Special Master is required to keep any student documents and information confidential. No student-specific information will be shared with plaintiffs' counsel unless the student's parent specifically consents. If there is any student-specific information in the Special Master's reports to the Court, that information would not be made public.

The Special Master will use this information only for his work to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders.  The disclosure of this information <u>does not</u> affect any of your rights as a parent to seek special education services for your child.

## IV.    Objections to Disclosure

If you agree to the disclosure of this information to the Special Master, you do not need to do anything more.

If you do not want your child's information shared with the Special Master, you must object to this disclosure by submitting an objection to DOE's attorney, addressed to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York  NY  10007

or via email at LVObjection@law.nyc.gov.  Please reference the *LV v. DOE* lawsuit (Case No. 03-9917) when writing.  An Objection Form accompanies this Notice, though no written objection will be rejected if it is not submitted on this form.  If you object, no records containing you and your child's personally identifiable information or other FERPA-protected information will be provided to the Special Master, although nominal and incidental disclosure of your child's name may occur.  **Any objections must be received by December 3, 2021 or for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order**.

**If you would like more information about this notice, please contact the attorneys for plaintiffs**, **Rebecca Shore, of Advocates for Children of New York, Inc. at 646-532-6078.**

## OBJECTION TO DISCLOSURE OF RECORDS
## LV v. DOE, 03 Civ. 9917 (SDNY)

If you agree to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, you do not need to complete this form.

If you object to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, please compete and return this form to:

       Jeffrey S. Dantowitz
       NYC Law Department
       100 Church Street, Room 2-121
       New York, NY  10007

or via email at LVObjection@law.nyc.gov

Child's name: _____

Name: _____

Address: _____

Impartial Hearing Order Case # (if known): _____

Date of Order (if known): _____

       If you object to the release of your confidential information, please check the line below:

       _____    I do not agree to have my confidential records disclosed to the Special Master in *L.V. v. DOE*.

_____           _____
     Date                                 Please sign here

If you object to the release of information, your objection must be received by December 3, 2021 or, for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order.

    \*   \*   \*   If you do not notify the DOE of your objections to the documents being released, you child's information will be provided to the Special Master appointed in *LV v. DOE*, 99 Civ. 9917 (SDNY) and/or consultants and employees of Thru-Ed.  The information will remain confidential and the disclosure of this information will not affect any of your rights to seek special education services for your child.

| |
|---|
| للاطلاع على هذا المستند باللغة العربية، قُم بزيارة الموقع الإلكتروني [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| YgÄs Ä̀à Ä̀ Ä̀à ná^l á̤ [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) ná^f̧ |
| 若要以中文查看，請上網到 [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| Pour consulter ce texte en français, allez sur [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| Pou wè tèks sa a an kreyòl ayisyen, ale sou [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| 본 문서를 한국어로 보시려면 다음 웹사이트를 이용하십시오: [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| Для просмотра документа на русском языке посетите [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| Para ver este contenido en español, visite [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| اس کو اردو میں دیکھنے کے لیے [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) پر جائں |