UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────────────────────X
**ADEJUMOKE OGUNLEYE**, as Parent and Natural
Guardian of D.O., and **ADEJUMOKE OGUNLEYE**,
Individually; *et al*.

                    Plaintiffs,                             23-cv-09092 (VSB)

     -against-

**MELISSA AVILES-RAMOS**, in her official capacity as
Chancellor of the New York City Department of
Education, and the **NEW YORK CITY
DEPARTMENT OF EDUCATION**,

                    Defendants.
─────────────────────────────────────────────────────────X

**PLAINTIFFS' MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Nicole Lancia, Esq.
Liberty & Freedom Legal Group, Ltd.
Attorneys for Plaintiff
105 East 34th Street, #190
New York, NY 10016
(646) 850-5035
nicole@pabilaw.org

## TABLE OF CONTENTS

*Page(s)*

PRELIMINARY STATEMENT......................................................................................1

STATEMENT OF FACTS..........................................................................................2

ADEJUMOKE OGUNLEYE, AS PARENT AND NATURAL GUARDIAN OF D.O..............2

MAYTINEE BIRD, AS PARENT AND NATURAL GUARDIAN OF H.C……….….………3

MARLENE FRIAS, AS PARENT AND NATURAL GUARDIAN OF A.F............................4

LEGAL FRAMEWORK............................................................................................6

PENDENCY AND THE INDIVIDUALIZED EDUCATION PROGRAM (IEP)......................6

SUMMARY JUDGMENT STANDARD……………………….…………………………9

ARGUMENT………………………………………………...………………………10

    I.      DOE'S NON-COMPLIANCE IS ACTIONABLE………………………………10

    II.    THE COURT SHOULD AWARD DAMAGES TO PLAINTIFFS FOR DOE'S
          DELAYED PAYMENTS AND ITS ONGOING FAILURE TO FULLY FUND
          H.C.'S NURSING……………………………………….…………..…..12

          A.  CONTRACTUAL LATE FEES AND INTEREST ARE RECOVERABLE AS
              A MATTER OF LAW……..…….……………….……………….……...15

          B.  *MENDEZ V. BANKS* DOES NOT PRECLUDE THE COURT FROM
              GRANTING PLAINTIFFS' MOTION FOR SUMMARY
              JUDGMENT……………………………...…………………...…………16

          C.  ENFORCING CONTRACTUAL LATE FEES AND INTEREST UPHOLDS
              PUBLIC POLICY……………………………………..……………..17

CONCLUSION…………………………………………….…………………………..17

## Table of Authorities

**Cases**                                                                            **Pages**

*A.M. v. Cornwall Cent. Sch. Dist.*,
752 F.3d 145 (2d Cir. 2014) ............................................................................................8

*Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist.*,
281 F. Supp. 2d 710 (S.D.N.Y. 2003) ..............................................................................9

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*,
290 F.3d 476–84 (2d Cir. 2002) .......................................................................................9

*Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*,
990 F.3d 152 (2d Cir. 2021) ...........................................................................................10

*Doe v. E. Lyme Bd. of Educ.*,
790 F.3d 440 (2d Cir. 2015) .......................................................................................9, 10

*Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*,
510 U.S. 7 (1993) ............................................................................................................15

*Forest Grove Sch. Dist. v. T.A.*,
557 U.S. 230 (2009) ........................................................................................................15

*G.L. v. Ligonier Valley Sch. Dist. Auth.*,
802 F.3d 601 (3d Cir. 2015) ...........................................................................................17

*IDEA. Rutherford*,
2019 WL 1437823 (E.D.N.Y. Aug. 4, 1998) .................................................................11

*J.M. v. New York City Dep't of Educ.*,
171 F. Supp. 3d 236 (S.D.N.Y. 2016) .............................................................................10

*Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*,
580 U.S. 386 (2017).........................................................................................................7

*L.B. v. Bd. of Educ. of City of New York*,
99 F. Supp. 2d 411 (S.D.N.Y. 2000) ..............................................................................11

*M.H. v. Bristol Bd. of Educ.*,
169 F. Supp. 2d 21 (D. Conn. 2001) ...............................................................................10

*M.H. v. New York City Dep't of Educ.*,
685 F.3d 217 (2d Cir. 2012) ...........................................................................................10

*M.R. v. Ridley Sch. Dist.*,
    744 F.3d 112 (3d Cir. 2014) ................................................................ 9

*Mendez v. Banks*,
    65 F.4th 56 (2d Cir. 2023) .................................................................. 16

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
    297 F.3d 195 (2d Cir. 2002) ................................................................. 6

*Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*,
    400 F.3d 508 (7th Cir. 2005) ............................................................... 9

*Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*,
    641 F. Supp. 2d 499 (E.D. Va. 2009) ................................................. 13

*R.F. v. New York City Dep't of Educ.*,
    746 F.3d 68 (2d Cir. 2014)(f) ............................................................... 7

*R.G. v. New York City Dep't of Educ.*,
    980 F. Supp. 2d 345 (E.D.N.Y. 2013) ............................................... 10

*Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*,
    471 U.S. 359 (1985) ........................................................................... 12

*Simchick v. Fairfax Cnty. Sch. Bd.*,
    553 F.3d 315 (4th Cir. 2009) ............................................................. 13

*Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*,
    96 F.3d 78 (3d Cir. 1996) .................................................................... 9

*T.K. City Dep't of Educ.*,
    810 F.3d 869 (2d Cir. 2016) ................................................................. 7

*T.Y. v. New York City Dep't of Educ.*,
    584 F.3d 412 (2d Cir. 2009) ............................................................... 10

*Town of Burlington v. Dep't of Educ. for Com. of Mass.*,
    736 F.2d 773 (1st Cir. 1984) ............................................................. 16

*Travis D. v. New York City Dep't of Educ.*,
    550 F. Supp. 2d 420 (S.D.N.Y. 2008) ................................................. 9

*Wall by Wall v. Mattituck-Cutchogue Sch. Dist.*,
    945 F. Supp. 501 (E.D.N.Y. 1996) ...................................................... 9

*Y.S. on behalf of Y.F. v. New York City Dep't.of Ed.,*
  2021 WL 1164571 (S.D.N.Y. March 26, 2021)………………………………………………10, 12

**Statutes**

20 U.S.C. § 1400 ............................................................................................... 1, 2, 3, 5, 17

20 U.S.C. § 1415 ...................................................................................................... 8, 10

42 U.S.C. § 1983 ...................................................................................................... 10, 11

**Other**

34 C.F.R. § 300.518 ................................................................................................... 8, 9

Fed. R. Civ. P. 56. R ..................................................................................................... 10

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment. This action seeks to enforce the rights of the Plaintiffs and Plaintiff-Students D.O., H.C., and A.F. under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Plaintiffs seek an order requiring the Defendants to fully implement and comply with the administrative orders issued under the IDEA. These orders, which have not been appealed, require the Defendants to fund the Students' private educational programs or placements and related services.

The binding and final administrative orders require DOE to fund Students' placement at the International Academy for the Brain ("iBRAIN"), including special transportation and nursing. DOE has not paid all of H.C.'s transportation and nursing services for the 2023-2024 SY and has still not paid any of A.F.'s nursing costs for the 2023-2024 SY. Currently, $16,350 remains outstanding for H.C.'s special transportation and $21,581.06 is due and owing for H.C.'s nursing services, per the terms of Plaintiff Bird's respective transportation and nursing agreements for the 2023-2024 SY. DOE incorrectly claims that those amounts are beyond what is required by the pendency implementation agreement [*see* DKT. No. 1-7], which implements the FOFD in IHO No. 228745, but its assertion overlooks that the *amount* of a pendency program ordered in one school year does not automatically carry over to the following school year.

As discussed below, Plaintiffs seek an order compelling DOE's full and immediate compliance with its outstanding funding obligations, consistent with the binding administrative orders. Plaintiffs also request damages for DOE's extreme delay in funding the Students' tuition, transportation, and nursing (and failure to fully fund H.C.'s transportation and nursing services), which can be assessed as late fees and interest under the terms of the respective service agreements.

Finally, Plaintiffs seek an order awarding reasonable attorneys' fees as prevailing parties in the administrative proceedings (and, if successful, reasonable attorneys' fees in this action), as well as costs for maintaining this action.

## STATEMENT OF FACTS

This case arises under IDEA, a federal law that ensures children with disabilities receive a free appropriate public education ("FAPE"). The Plaintiffs are the Parents or natural guardians of children with a traumatic brain injury whom the Defendants have denied a FAPE. Despite prevailing in their administrative proceedings, Plaintiffs and their children have suffered harm because Defendants failed to comply with final and binding administrative orders requiring them to pay amounts that have accrued to Plaintiffs under the binding tuition, transportation, and nursing contracts, where applicable.

## ADEJUMOKE OGUNLEYE, AS PARENT AND NATURAL GUARDIAN OF D.O.

On July 5, 2023, Plaintiff Ogunleye filed a DPC to seek funding for D.O.'s placement at iBRAIN, including special transportation services, for the 2023-2024 ESY, at which time the Parent should have had funding through pendency as a matter of law. [Dkt. No. 1, ¶ 81.] The DPC was assigned to Impartial Hearing Officer ("IHO") Joshua Arocho in Case No. 251168. [Dkt. No. 1-2.] In the DPC, the Parent indicated that the basis for D.O.'s pendency for the 2023-2024 SY was established by a previous Findings of Fact and Decision ("FOFD") issued by IHO Helene Peyser which found that iBRAIN was the appropriate placement for D.O. during the 2020-2021 and 2021-2022 SYs and ordered DOE to fund the full cost of D.O.'s tuition at iBRAIN, including related services, and the cost of DOE's special transportation. [*Id.*]

On August 25, 2023, IHO Arocho issued an Order on Pendency in IHO Case No. 251168, which found D.O.'s pendency placement at iBRAIN for the 2023-2024 ESY, and thereby ordered

DOE to fund D.O.'s placement at iBRAIN for the 2023-2024 ESY, including transportation costs, pending a final resolution of this matter. [Dkt. No. 1, ¶ 85.] Because Defendants did not appeal IHO Arocho's Order on Pendency, it is the final Order on D.O.'s pendency placement for the 2023-2024 SY. [*Id.* ¶¶ 86-87.]

At the beginning of the 2023-2024 school year, Plaintiff signed agreements with iBRAIN and the transportation provider, Sister's Travel and Transportation Services, LLC ("Sister's Transportation"), to provide her child with an education for this school year. [Dkt. No. 1, ¶ 84.] On October 12, 2023, Plaintiff received a letter from Sister's Transportation informing her of D.O.'s outstanding balances for the 2022-2023 and 2023-2024 SYs and stating that transportation services from D.O.'s home to iBRAIN would cease unless the outstanding balances were made current. [*Id.*, ¶ 90; Dkt. No. 1-4.] Defendants' failure to fund D.O.'s transportation as part of his Pendency placement/program jeopardized his educational placement. [Dkt. No. 1, ¶ 91.]

DOE did not fund D.O.'s tuition and special transportation for the 2023-2024 SY until 2024, several months after the Order on Pendency issued and went unappealed.

### MAYTINEE BIRD, AS PARENT AND NATURAL GUARDIAN OF H.C.

Plaintiff Bird filed a DPC on July 5, 2023, regarding H.C.'s pendency and seeking funding for H.C.'s pendency at iBRAIN for the 2023-2024 SY, at which time Plaintiff should have already had funding as a matter of law. The DPC was assigned IHO Case No. 250798. [Dkt. No. 1, ¶ 93; Dkt. No. 1-6.] In the DPC, the Parent indicated that the basis H.C.'s pendency for the 2023-2024 SY was established by a previous FOFD issued by IHO Richard Zeitler in IHO Case No. 228745, which found that iBRAIN was the appropriate placement for H.C. during the 2022-2023 SY and ordered DOE to fund the full cost of H.C.'s tuition at iBRAIN, including the cost of H.C.'s special transportation and nursing services. [Dkt. No. 1, ¶ 94; Dkt. No. 1-6.]

On August 11, 2023, DOE issued a Pendency Implementation Form in Case No. 250798, which stated that H.C.'s pendency placement was at iBRAIN for the 2023-2024 SY and that DOE consented to fund H.C.'s placement at iBRAIN for the 2023-2024 ESY, including transportation and nursing costs, pending a final resolution of this matter. [Dkt. No. 1, ¶ 96; Dkt. No. 1-7.] That form cites the FOFD in IHO No. 228745 and states:

> Transportation: '…round-trip door-to-door special education transportation services to enable the Student's attendance at the Private School… via lift-bus ambulance, with a 1:1 nurse present during transportation, and oxygen or a ventilator (or both), air conditioning, and with as reasonably limited travel time as possible, the cost of which shall be paid in accordance with the terms of the contract entered into evidence, provided that the rate shall not exceed $345.00 per trip…' see pg. 24-25 of FOFD in DPC 228745.

> 1:1 nurse or 1:1 paraprofessional (including transportation services provided by a 1:1 nurse) '…where such services are not paid under the Private School enrollment contract or the transportation contract, respectively, the DOE shall fund those services directly to such providers, paid at the higher of either current market rate or the highest rate the Department has paid during the six months preceding this decision.' See pg. 25 of FOFD in DPC 228745.

[Dkt. No. 1-7.]

Plaintiff provided the Implementation Unit of the DOE with all documentation necessary to implement the Pendency Implementation Form provided by the DOE. However, DOE belatedly paid H.C.'s tuition costs and made only partial payments toward H.C.'s transportation and nursing costs several months after the Pendency Implementation Form issued.

At the beginning of the 2023-2024 school year, Plaintiff signed agreements with iBRAIN, Sister's Transportation, and the nursing service provider. [Dkt. No. 1, ¶ 95; Declaration of Nicole Lancia ("Lancia Dec."), Exs. 5-7.] On October 10, 2023, Plaintiff Bird received a letter from Sister's Transportation informing her of H.C.'s outstanding balances from the 2022-2023 and 2023-2024 SYs and stating that transportation services from H.C.'s home to iBRAIN would cease

unless the outstanding balances were made current.  [Dkt. No. 1, ¶ 99; Dkt. No. 1-8.]  Defendants' failure to fund H.C.'s transportation as part of her Pendency placement/program jeopardized her educational placement. [Dkt. No. 1, ¶ 100.]

To date, DOE has still not paid $21,581.06 in transportation costs and $41,560 in nursing costs for the 2023-2024 SY. [Lancia Dec., ¶ 15 and Exs. 6, 7].

### MARLENE FRIAS, AS PARENT AND NATURAL GUARDIAN OF A.F.

Plaintiff Frias filed a DPC on July 5, 2023, regarding A.F.'s pendency and seeking funding for A.F.'s pendency at iBRAIN for the 2023-2024 SY, at which time Plaintiff should have already had funding as a matter of law.  The DPC was assigned to IHO Marcel Denis in Case No. 251068 [Dkt. No. 1, ¶ 93; Dkt. No. 1-10.]  In the DPC, the Parent indicated that the basis A.F.'s pendency for the 2023-2024 SY was established by a previous FOFD issued by IHO Jean Brescia, which found that iBRAIN was the appropriate placement for A.F. during the 2022-2023 SY and ordered DOE to fund the full cost of A.F.'s tuition at iBRAIN, including related services, and the cost of her special transportation.  [Dkt. No. 1, ¶ 103; Dkt. No. 1-10; Lancia Dec., Ex. 8.]

On August 28, 2023, IHO Denis issued an Order on Pendency in IHO Case No. 251068, which found A.F.'s pendency placement at iBRAIN for the 2023-2024 ESY, and ordered DOE to fund A.F.'s placement at iBRAIN for the 2023-2024 ESY, including transportation costs, pending a final resolution of this matter.  [Dkt. No. 1, ¶¶ 105; Dkt. No. 1-11.]  The Order on Pendency states that "DOE, in absentia, agreed that pendency lied in IHO Jean Marie Brescia's FOFD dated May 30, 2023." [Dkt. No. 1-11, p. 3].  Defendants did not appeal IHO Denis' Order, so it is the final Order on A.F.'s pendency placement for the 2023-2024 SY. [*Id.*, ¶¶ 106-107.]

Plaintiff Frias timely provided the Implementation Unit of the DOE with all documentation necessary to implement IHO Denis's Pendency Order in IHO Case No. 251068.  [Dkt. No. 1, ¶ 108].  However, DOE did not pay for A.F.'s tuition and transportation costs until 2024.

At the beginning of the 2023-2024 SY, Plaintiff Frias signed agreements with iBRAIN and Sister's Transportation to provide her child with an education for that school year.[1]  [Dkt. No. 1, ¶ 104; Lancia Dec., Exs. 9-10.]  On October 11, 2023, Plaintiff received a letter from Sister's Transportation informing her of A.F.'s outstanding balances from the 2021-2022, 2022-2023, and 2023-2024 SYs and stating that transportation services from the A.F.'s home to iBRAIN would cease unless the outstanding balances were made current. [Dkt. No. 1, ¶ 110; Dkt. No. 1-12.]  Defendants' failure to timely fund A.F.'s transportation as part of her Pendency placement/program jeopardized her educational placement.  [Dkt. No. 1, ¶ 111.]

Though DOE belatedly paid for the Students' tuition and for D.O.'s and A.F.'s transportation, late fees and interest accrued under the terms of the Parents' agreements with iBRAIN and Sister's Travel.  [*See* Lancia Dec., Exs. 2, 3, 5, 9, 10]. For H.C., as DOE has still not paid the total amount due for transportation and nursing costs, late fees and interest continue to accrue under the terms of the respective agreements between Plaintiff Bird and the service providers.  [*See* Lancia Dec., Exs. 6, 7].

## LEGAL FRAMEWORK

## PENDENCY AND THE INDIVIDUALIZED EDUCATION PROGRAM (IEP)

Congress enacted IDEA "to assure that all children with disabilities have available to them... a free appropriate public education which emphasizes special education and related services

---

[1] In January 2024, Plaintiff also signed an agreement with a nursing services provider. [Lancia Dec., Ex. 11].  Nursing costs in the amount of $140,910 remain outstanding.

designed to meet their unique needs." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex-rel. Charlene F.*, 526 U.S. 66, 68 (1999). Children are entitled to "an education 'likely to produce progress, not regression,' and one that 'afford[s] the student with an opportunity greater than mere trivial advancement.'" *T.K. v. New York City Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) (quoting *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015); *accord Endrew F. ex-rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017) ("[A] student offered an educational program providing 'merely more than *de minimis* progress from year to year can hardly be said to have been offered an education at all.'").

The Individualized Education Program, or IEP, is "[t]he 'centerpiece' of the IDEA and its principal mechanism for achieving this goal." *T.K.*, 810 F.3d at 875. Indeed, "[t]he IEP is the means by which special education and related services are 'tailored to the unique needs' of a particular child." *Endrew F. ex-rel. Joseph F.*, 580 U.S. 386, 391 (2017) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 181 (1982). And "[w]here the IEP is substantively deficient, parents may unilaterally reject it in favor of sending their child to private school and seek tuition reimbursement from the State." *T.K.*, 810 F.3d at 875.

To challenge an IEP, a parent must first file a "due process complaint" detailing the alleged deficiencies of the IEP. *C.F. ex-rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014) (citing 20 U.S.C. § 1415(b)(7)(A), (f)(1)). Following a 30-day resolution period, the parent and school district will participate in an "impartial due process hearing" before an Impartial Hearing Officer ("IHO"). *Id.* Under New York law, once the IHO renders a decision, any party aggrieved by the decision may request a review by a state review officer, who can affirm or modify the IHO's order. *Id.* (citing N.Y. Educ. Law § 4404(1)-(2) (McKinney). After that, "[e]ither party

may bring a civil action before a federal or state court to review the SRO's decision." 20 U.S.C.
§ 1415(i)(2)(A)).

During the pendency of the aforementioned judicial proceedings, the IDEA's "pendency provision," or "stay-put provision" (20 U.S.C. § 1415(j)), "entitles a disabled child to 'remain in his then-current educational placement.'" *T.M. ex-rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014) (quoting 20 U.S.C. § 1415(j)). The core concern of the IDEA is to provide a *continuous, uninterrupted education* to children with disabilities; accordingly, the pendency provision "maintain[s] the educational status quo" of the child and ensures continuity of services while the parties' dispute is being resolved. *See id.* (citing *Mackey ex-rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160–61 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004). "There is no separate requirement that a court determines the placement is appropriate; rather, the obligation arises automatically from a determination that the private school is the protected status quo during the period in which the dispute resolution process is ongoing." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 123-24 (3d Cir. 2014) (quotation omitted).

34 C.F.R. § 300.518(d) states:

> If the hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal *agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents* for purposes of paragraph (a) of this section."

(Emphasis added).

34 C.F.R. § 300.518(a) provides that "during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under § 300.507, . . . the child involved in the complaint must remain in his or her current educational

placement." The IDEA's pendency provision "therefore requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015); *see* 34 C.F.R. § 300.518(d), (a). Moreover, "once the parents' challenge to a proposed IEP succeeds, consent to the private placement is implied by law, and the requirements of the stay-put provision become the responsibility of the school district." *See Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 483–84 (2d Cir. 2002) (cleaned up).

The stay-put provision "has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy." *Casey K. ex-rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (citing *Honig v. Doe*, 484 U.S. 305, 326–27 (1988)). Although IDEA does not specify which party pays when a child's pendency placement is at a private school, "the school district's obligation to do so is well established by case law." *M.R.*, 744 F.3d at 118–19 (quotation omitted); *see also Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 87 (3d Cir. 1996) ("Without interim financial support, a parent's 'choice' to have his child remain in what the state has determined to be an appropriate private-school placement amounts to no choice at all.").

## SUMMARY JUDGMENT STANDARD

Courts have noted that "[s]ummary judgment appears to be the most pragmatic procedural mechanism in the Federal Rules for resolving IDEA actions" but, unlike the standard for motions for summary judgment in other civil actions, "[t]he inquiry. . . is not directed to discerning whether there are disputed issues of fact, but whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Jennifer D. ex-rel. Travis D. v. New York*

*City Dep't of Educ.*, 550 F. Supp. 2d 420, 429 (S.D.N.Y. 2008); *Wall by Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F. Supp. 501, 508 (E.D.N.Y. 1996); *see also Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 281 F. Supp. 2d 710 (S.D.N.Y. 2003). Thus, a motion for summary judgment in an IDEA case in the Second Circuit serves as a procedural mechanism. *See M.H. v. New York City Dep't of Educ.*, 685 F.3d 217 (2d Cir. 2012).

The court's review in IDEA matters generally involves an independent examination of the administrative record under the preponderance-of-the-evidence standard, and the court is required to grant appropriate relief as determined by that standard. 20 U.S.C. § 1415 (Procedural safeguards); *M.H.*, 685 F.3d 217; *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412 (2d Cir. 2009); *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152 (2d Cir. 2021). The existence of disputed issues of fact does not defeat the motion, unlike ordinary summary judgment motions under Fed. R. Civ. P. 56. *R.G. v. New York City Dep't of Educ.*, 980 F. Supp. 2d 345, 359 (E.D.N.Y. 2013); *J.M. v. New York City Dep't of Educ.*, 171 F. Supp. 3d 236, 244 n.6 (S.D.N.Y. 2016).

## ARGUMENT

## I. DOE'S NON-COMPLIANCE IS ACTIONABLE

Federal courts have granted relief where DOE's failure to honor an administrative officer's final determination resulted in a deprivation of services. *E.g.*, *Y.S. on behalf of Y.F.*, *v. New York City Dep't. of Ed.*, 2021 WL 1164571 (S.D.N.Y. March 26, 2021). DOE's continued refusal to comply with legally binding orders by failing to timely and fully fund the Students' pendency placements represents a systemic failure that goes beyond the individual claims here. This type of prolonged non-compliance has been deemed actionable under 42 U.S.C. § 1983, as cases have recognized that failing to provide mandated educational services violates federally protected rights. *Doe*, 790 F.3d at 456 (holding that school district's failure to provide stay-put services is

actionable under 42 U.S.C. § 1983); *M.H. v. Bristol Bd. of Educ.*, 169 F. Supp. 2d 21, 28-29 (D. Conn. 2001) (holding that the IDEA may serve as the basis for a § 1983 cause of action); *R.B. ex-rel. L.B. v. Bd. of Educ. of City of New York*, 99 F. Supp. 2d 411, 418 (S.D.N.Y. 2000) (same).

Here, while DOE has paid $150,420 for H.C.'s transportation services, the amount that the Parent owes per the terms of the 2023-2024 Transportation Agreement is $166,770, not including any late fees and interest. Though the FOFD in IHO No. 228745 stated that the rate should not exceed $345/trip (for the 218 school days) [DKT. No. 1-7], that amount was for the 2022-2023 SY, not 2023-2024.  And the cost of H.C.'s transportation during the 2022-2023 SY does not carry over to the 2023-2024 SY; the 2023-2024 SY rate per the terms of the Transportation Agreement controls.  Therefore, DOE still owes $16,350.  Thus, DOE did not pay the full amount owed under the terms of the 2023-2024 Transportation Agreement and should be ordered to pay the remaining balance.

As to H.C.'s nursing, the FOFD ordered "…where such services are not paid under the Private School enrollment contract or the transportation contract, respectively, the DOE shall fund those services directly to such providers, paid at the higher of either current market rate or the highest rate the Department has paid during the six months preceding this decision." [DKT. No. 1-7].  Similarly, DOE paid $270,974.40 for H.C. nursing services for the 2023-2024 SY, but the amount owed by the Parent per the terms of the 2023-2024 Nursing Agreement is $292,556. Therefore, DOE still owes $21,581.06 and should be ordered to pay the remaining balance.

The procedural rights guaranteed under the IDEA must be rigorously enforced to protect students from disruptions in their educational services. Systemic delays and non-compliance with funding obligations have been deemed violations of students' constitutional rights under the Due Process Clause of the Fourteenth Amendment.  Under 42 U.S.C. § 1983, federal district courts

have subject-matter jurisdiction to enforce administrative decisions rendered under IDEA. *Rutherford*, 2019 WL 1437823, at *25 (quoting *A.T. v. New York State Educ. Dep't*, No. 98-CV-4166 (JG), 1998 WL 765371, at *7, 9-10 (E.D.N.Y. Aug. 4, 1998)); *see Y.S. on behalf of Y.F.*, 2021 WL 1164571 (enjoining DOE to comply with IHO order).  Given DOE's documented history of such shortcomings and its continuing failure to timely and fully fund the Students' pendency placement/program for the 2023-2024 SY, summary judgment is both appropriate and warranted.

## II.   THE COURT SHOULD AWARD DAMAGES TO PLAINTIFFS FOR DOE'S DELAYED PAYMENTS AND ITS ONGOING FAILURE TO FULLY FUND H.C.'s NURSING

As explained above, the binding administrative decisions require DOE to directly fund the Students' pendency placements, which include tuition at iBRAIN, transportation with Sister's Travel, and 1:1 nursing services with a private provider.  It is also undisputed that both the iBRAIN Contract and the Transportation Agreement include explicit provisions requiring payment of late fees and interest. Such late fees and interest are part and parcel of the overdue amounts owed; the binding agreements do not permit them to be excised. The late fees and interest are owed (and owing) only because of DOE's dilatory conduct in failing or refusing to timely fund the Students' tuition, transportation, and nursing services.  Therefore, Plaintiffs request that the Court award damages for DOE's delayed compliance and ongoing failure to fully comply with its pendency obligations to H.C., which may be assessed as late fees and interest.

Case law consistently affirms that the "make-whole" remedy includes compensation for financial burdens from a school district's failure to provide FAPE, including interest and other associated charges. *See Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985) (establishing the "make-whole" remedy). The administrative orders, by approving the private placements, implicitly validated the contractual agreements with iBRAIN and Sisters, which explicitly include late fees and interest. The FOFDs and orders on pendency, in

ordering funding, necessarily embraced those financial terms. To argue otherwise would allow the DOE to profit from its delays, forcing parents to subsidize DOE's non-compliance by absorbing accrued late fees and interest.  Moreover, that each Parent received a letter from Sister's Travel warning that their children's transportation services may cease without payment of the outstanding amounts jeopardized their children's educational placements, for without transportation to and from iBRAIN, the Students' ability to attend iBRAIN would have also ceased.

Recoverable costs under IDEA are not limited solely to tuition but may include additional financial burdens imposed by a school district's failure to make timely payments. In *JP ex-rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 641 F. Supp. 2d 499, 506 (E.D. Va. 2009) (holding that recoverable costs may include credit-card transaction fees and interest). The Court in *JP* determined that the plaintiffs there were entitled to a reasonable interest rate as compensation for tuition payments made with their credit cards, emphasizing that the court has broad discretion to award appropriate relief. *JP ex-rel. Peterson*, 641 F. Supp. 2d at 506. *See also M.S. ex-rel. Simchick v. Fairfax Cnty. Sch. Bd.*, 553 F.3d 315, 325 (4th Cir. 2009) (district courts have broad discretion in IDEA awards and such awards should be equitable).

Here, Defendants were aware of Plaintiffs' contractual obligations when the Plaintiffs filed their DPCs; realistically, Defendants knew of their pendency obligations when the underlying administrative decisions became final and binding.  Additionally, Defendants have a documented history of unjustified delays in meeting their IDEA funding obligations, underscoring their responsibility to pay the late fees and interest incurred by the Plaintiff, as stipulated in the contractual agreements. The financial impact of DOE's delays is evident in the specific late fees and interest assessed under the contractual agreements. The tuition, transportation, and nursing service agreements for the 2023-2024 school year expressly outline the fees for late payments.

These provisions were explicitly negotiated and agreed upon, with the understanding that DOE would be the responsible payor. Given this Court's broad discretion under the IDEA to ensure that parents are not financially penalized for enforcing their child's right to a FAPE, DOE must be held responsible for the late fees and interest directly resulting from its own non-compliance with the FOFD.

In that vein, the late fees and interest charged by the service providers are foreseeable, known to DOE, and result from DOE's persistent delays in funding the Students' placement. Late fees and interest impose financial hardships on families and jeopardize students' access to uninterrupted education—as is the case here. Indeed, DOE belatedly paid for the Students' tuition and D.O.'s and A.F.'s transportation costs, and DOE still owes $21,581.06 for H.C.'s transportation and $41,560 for H.C.'s nursing costs, not including any accrued late fees and interest.

DOE's failure to comply violates its legal obligations to these Students under the IDEA. DOE's continued non-compliance with binding administrative orders undermines the IDEA's fundamental guarantee of uninterrupted educational services and imposes significant and unnecessary financial burdens on families who rely on these mandated payments. This Court should intervene to ensure that DOE fulfills its statutory and contractual obligations in a timely manner, as required by law.

Denying Plaintiffs' request for direct funding of the outstanding amounts and reimbursement of these late fees and interest would effectively deprive them of the "free" component of a FAPE. DOE's failure to comply with the payment schedules required by the contractual agreements and the final administrative decisions has imposed financial hardship on Plaintiffs, making them liable for late fees and interest that would not have been incurred had DOE fulfilled its legal obligations

14

in a timely manner.  Preventing parents from recovering these additional costs after the final decision would render any relief obtained an "empty victory." *See Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 12 (1993).

### A.  Contractual Late Fees and Interest are Recoverable as a Matter of Law

To the extent Defendants argue that damages assessed as late fees and interest are not recoverable as a matter of law, this assertion misapplies IDEA enforcement and disregards precedent. While not a direct signatory, DOE's obligation to fund or reimburse appropriate private placements necessarily binds it to the reasonable and customary terms of those contracts.

Recently, in *Mendez v. Aviles-Ramos et al.*, Judge McMahon rejected the DOE's position that it was not obligated to pay late fees and interest as applied to transportation late fees, and found its argument that ordering payment of those fees would violate public policy "unavailing." 25-cv-01096-CM, Dkt. No. 45 at *8 n.3 (S.D.N.Y. Oct. 1, 2025). As the Court stated:

> Applying the relevant language from the [final administrative order], the Court finds that DOE must pay for late fees and interest arising from Plaintiff's Transportation Agreement with Sisters Travel. *The reason is that the plaintiff signed a contract to pay those amounts if they were incurred*.

*Id.* at 9. (Emphasis added).

Therefore, here, the SROs' determinations that a private placement is appropriate and that an order to fund it is appropriate make the DOE responsible for the contract's costs, including late fees and interest. *See generally Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009) (discussing the broad equitable powers of courts in IDEA cases). Accordingly, this Court should follow Judge McMahon's reasoning and ruling in *Mendez* and order DOE to pay late fees and interest for tuition, transportation, and nursing because of its inexcusable delays. *See* 25-cv-01096-CM, Dkt. No. 45 at *8 n.3 (S.D.N.Y. Oct. 1, 2025).

### B.    *Mendez v. Banks* Does Not Preclude the Court From Granting Plaintiffs' Motion for Summary Judgment

To the extent Defendants rely on *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023), *cert. denied,* 144 S. Ct. 559 (2024), such reliance would be misplaced. That case held that the statute does not require immediate payment under pendency without supporting documentation. *Mendez* did not involve the enforcement of final, unappealed administrative orders awarding full tuition, transportation, and nursing funding.  More importantly, the instant case pertains to funding for the 2023-2024 SY; DOE did not make any pendency payments here until 2024, months after the pendency-setting administrative decisions became final.  And any payment of the outstanding amounts at this point cannot be deemed "immediate."  *Mendez* also did not address contractual late fees or interest provisions triggered by post-order nonpayment. And while *Mendez* recognized administrative realities involved in issuing payments, it did not grant the DOE a license to inexplicably delay payments indefinitely without financial consequence, especially when such consequences are contractually outlined.

Moreover, where DOE does not comply with final administrative orders in a timely manner and the underlying contracts include late fee provisions, those penalties are enforceable. *See, e.g.*, *Mendez v. Aviles-Ramos*, 25-cv-01096-CM, Dkt. No. 45 at *8 n.3 (S.D.N.Y. Oct. 1, 2025). IDEA's "make-whole" remedy ensures full compensation for expenses incurred because of a school district's failure to provide FAPE, including foreseeable and contractually agreed-upon charges like late fees and interest. *See Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773, 788 (1st Cir. 1984), *aff'd sub nom. Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985) (affirming that reimbursement should cover all costs parents incur in providing appropriate education).

16

### C.       Enforcing Contractual Late Fees and Interest Upholds Public Policy

The paramount public policy of the IDEA is to ensure FAPE for all children with disabilities. 20 U.S.C. § 1400(d)(1)(A). When a school district does not provide a FAPE and parents secure private services, public policy shifts to ensure parents are not financially penalized. They cover actual costs incurred by service providers due to delayed payments and compensate parents for their financial burden, preserving the "make-whole" remedy.

Enforcing these contractual provisions serves a crucial public policy objective: incentivizing DOE's timely compliance with its federal obligations to implement a child's pendency placement, including funding and payment in the ordinary course. Here, we are well beyond the "ordinary course."  If the DOE can delay payments without consequence, there is little incentive to promptly adhere to administrative orders and fulfill its obligations to affected children with disabilities. Simply put, the DOE's non-compliance is unacceptable and actionable, and its delays have threatened the Students' special transportation services with Sister's Travel and also resulted in significant late fees. *See generally G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 620 (3d Cir. 2015) (emphasizing that IDEA aims to prevent school districts from dragging their feet).

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs ask this Court to grant their Motion for Summary Judgment in its entirety and order such other, further, and different relief as the Court deems just, proper, and equitable.

Dated: October 31, 2025
       New York, N.Y.

17

Respectfully submitted,
Liberty & Freedom Legal Group, Ltd.
*Attorneys for Plaintiffs*

By: ____***/s/  Nicole Lancia***_____
Nicole Lancia, Esq.

Liberty and Freedom Legal Group, Ltd.
105 East 34th Street, Suite 190
New York, N.Y. 10016
(646) 850-5035
nicole@pabilaw.org

18

## <u>Verification of Word Count</u>

      Pursuant to the Local Rules of the District Court for the Southern District of New York and Judge Vernon S. Broderick's Individual Rules of Practice in Civil Cases, the undersigned verifies that the word count of this document, excluding the caption and titles is 5,345, which is less than 8,750 and the font is 12-point.


                    By: ___*/s/ Nicole Lancia*_____
                      Nicole Lancia, Esq.