UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
**ADEJUMOKE OGUNLEYE**, as Parent and Natural
Guardian of **D.O.**, and **ADEJUMOKE OGUNLEYE**,
Individually;  et al.,

        Plaintiffs,        23-cv-09092 (VSB)

   -against-

**MELISSA AVILES-RAMOS**, in her official capacity as
Chancellor of the New York City Department of
Education, and the **NEW YORK CITY
DEPARTMENT OF EDUCATION**,

        Defendants.
---------------------------------------------------------------X

### PLAINTIFFS' OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Nicole Lancia, Esq.
Liberty & Freedom Legal Group
*Attorneys for Plaintiff*
105 East 34th Street  #190
New York, NY 10016
(646) 850-5035
nicole@pabilaw.org

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT........................................................................................................................ 2

I.    THE DECLARATION OFFERED IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD NOT BE STRICKEN ........................................................ 2

II.    PLAINTIFFS' CLAIMS ARE NOT MOOT AND SHOULD BE ADJUDICATED........ 4

    A.    H.C.'s Pendency Placement was not fully funded by the DOE........................................... 4

    B.    DOE failed to fully fund A.F.'s pendency placement by refusing nursing service ............ 5

III.    DOE IS RESPONSIBLE FOR DIRECTLY FUNDING THE CONTRACTUAL AMOUNTS DUE AND OWING, INCLUDING LATE FEES AND INTEREST........................ 7

    A.    Contractual Late Fees and Interest are Recoverable as a Matter of Law............................ 7

    B.    Plaintiffs' Claims for Late Fees and Interest is Not Barred by Exhaustion of Remedies Defense................................................................................................................................. 9

    C.    Enforcing Contractual Late Fees and Interest Upholds Public Policy.............................. 12

CONCLUSION................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

*Pages(s)*

**Cases**

*Cave v. E. Meadow Union Free Sch. Dist.*,
  514 F.3d 240 (2d Cir. 2008) ...................................................................................11

*Coolidge v. United States,*
  2015 U.S. Dist. LEXIS 131583 at *7 (W.D.N.Y. September 28, 2015) .....................................3

*Cosgrove v. Bd. of Educ.*,
  175 F. Supp. 2d 375 (N.D.N.Y. 2001) ...................................................................11

*Doe v. East Lyme Bd. of Educ.*,
  790 F.3d 440 (2d Cir. 2015) ...................................................................................4

*Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*,
  510 U.S. 7 (1993) ...................................................................................................8

*Forest Grove Sch. Dist. v. T.A.*,
  557 U.S. 230 (2009) ...............................................................................................9

*G.L. v. Ligonier Valley Sch. Dist. Auth.*,
  802 F.3d 601 (3d Cir. 2015) .................................................................................14

*Hidalgo v. Porter.*,
  2024 U.S. Dist. LEXIS 159988, 21-cv-10794 (S.D.N.Y. Dec. 20, 2023) ...........................11, 12

*Hollander v. Am. Cyanamid Co.*,
  172 F.3d 192, 198 (2d Cir. 1999) ...........................................................................3

*Rutherford v. Fla. Union Free Sch. Dist.*,
  2019 U.S. Dist. LEXIS 55971 (E.D.N.Y. Aug. 4, 1998) .............................................4

*L.V. v. NYC City Dep't of Educ.*,
  2021 U.S. Dist. LEXIS 31209 (S.D.N.Y. Feb 18, 2021) .......................................13, 14

*Mendez v. Banks*,
  65 F.4th 56 (2d Cir. 2023) ...............................................................................11, 11

*Mendez v. Aviles-Ramos*,
  2025 U.S. Dist. LEXIS195004, 25-cv-1906 (S.D.N.Y. Oct 1, 2025) ...................................8, 13

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ*,
  297 F.3d .195, 199 (2d Cir. 2002)...........................................................................9, 11

i

*Parochial Bus Sys., Inc. v. Bd. of Educ.*,
  60 N.Y.2d 539 (1983) ........................................................................................11

*JP ex-rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*,
  641 F. Supp. 2d 499 (E.D. Va. 2009) ..................................................................7

*Raskin v. Wyatt Co.*,
  125 F.3d 55 (2d Cir. 1997) ...................................................................................3

*Simchick v. Fairfax Cnty. Sch. Bd.*,
  553 F.3d 315 (4th Cir. 2009) ...............................................................................8

*Town of Burlington v. Dep't of Educ. for Com. of Mass.*,
  736 F.2d 773 (1st Cir. 1984) ................................................................................7

*Ventura de Paulino v. New York City Dep't of Educ.*,
  959 F.3d 511 (2d Cir. 2020) .................................................................................5

*W.B. v. Matula*,
  67 F.3d 484–95 (3d Cir. 1995) ...........................................................................11

*Y.S. on behalf of Y.F. v. New York City Dep't of Educ.*
  2021 WL 1164571 (S.D.N.Y. March 26, 2021) ...................................................4

*Zvi D. v. Ambach*,
  694 F.2d 904 (2d Cir. 1982) .................................................................................5

**Statutes**

20 U.S.C. § 1415 ........................................................................................8, 11

20 U.S.C. § 1400 ...............................................................................................1

42 U.S.C. § 1983 ...............................................................................................4

**Other**

Fed. R. Civ. P. 56 .............................................................................................3

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Memorandum of Law in opposition to Defendants' Motion for Summary Judgment and in further support of their Motion for Summary Judgment. This action seeks to enforce the rights of the Plaintiffs and Plaintiff-Students D.O., H.C., and A.F. under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Plaintiffs seek an order requiring the Defendants to fully implement and comply with the administrative orders issued under the IDEA. These orders, which have not been appealed, require the Defendants to fund the Students' private educational programs or placements and related services.

The binding and final administrative orders require DOE to fund Students' placement at the International Academy for the Brain ("iBRAIN"), including special transportation and nursing. DOE has not paid all of H.C.'s transportation and nursing services for the 2023-2024 SY and has still not paid any of A.F.'s nursing costs for the 2023-2024 SY. Currently, $16,350 remains outstanding for H.C.'s special transportation and $21,581.06 is due and owing for H.C.'s nursing services, per the terms of Plaintiff Bird's respective transportation and nursing agreements for the 2023-2024 SY. DOE incorrectly claims that those amounts are beyond what is required by the pendency implementation agreement [*see* ECF No. 49, p. 12], which implements the FOFD in IHO No. 228745, but its assertion overlooks that the *amount* of a pendency program ordered in one school year does not automatically carry over to the following school year.

Defendants have moved for summary judgment on the basis that Plaintiffs' claims are moot as all pendency payments that DOE is obligated to make have been made, that Plaintiffs' claims for late fees are barred. [ECF No. 49, pp. 12-25]. DOE argues that Plaintiffs' claims for late fees should be barred based on failure to exhaust remedies, and that late fees frustrate DOE's fiscal policy, are not a component of DOE's pendency obligation, and would violate public policy. [*Id.*].

1

Defendants' argument disregards both the law and facts. Rather, it is established that Defendants are obligated to pay for all components of Plaintiff-Students' pendency placement at iBRAIN, including tuition and related services, as well as special transportation and nursing services. DOE is obligated to pay contractual late fees for its unnecessary and unreasonable delay in initiating and paying these pendency placements. Accordingly, Defendants' Motion for Summary Judgment must be denied.

Furthermore, as fully discussed below, Plaintiffs seek an order compelling DOE's full and immediate compliance with its outstanding funding obligations, consistent with the binding administrative orders. Plaintiffs also request damages for DOE's extreme delay in funding the Students' tuition, transportation, and nursing (and failure to fully fund H.C.'s transportation and nursing services), which can be assessed as late fees and interest under the terms of the respective service agreements. Finally, Plaintiffs seek an order awarding reasonable attorneys' fees as prevailing parties in the administrative proceedings (and, if successful, reasonable attorneys' fees in this action), as well as costs for maintaining this action.

## **ARGUMENT**

## I.    **THE DECLARATION OFFERED IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD NOT BE STRICKEN**

Initially, Defendants argue that the declaration offered by Plaintiffs in support of their Motion for Summary Judgment should be stricken as it is not based on personal knowledge. [ECF No. 49, p. 10]. Specifically, Defendants argue that Plaintiff's counsel cannot have personal knowledge of Plaintiffs' "familial relationships of and the disability statuses of the respective children," as well as whether the Plaintiffs signed certain documents. [*Id.*]. Of note, Defendants have never previously contested nor do they contest in their Motion for Summary Judgment the

familial relationships, the disability status of the Plaintiff-Students, or the authenticity of the underlying contracts.

"An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997) (noting that a district court "has broad discretion in choosing whether to admit evidence" on a motion for summary judgment.) Rather than strike an offending declaration or attorney's affirmation, "courts considering a motion for summary judgment are free to disregard the improper portions, independently review the record, and consider only that which is admissible." *Coolidge v. United States,* 2015 U.S. Dist. LEXIS 131583 at *7 (W.D.N.Y. Sep. 28, 2015) (citation omitted). The Second Circuit has noted that where declarations have been stricken, they have "more resembled an adversarial memorandum than a bona fide affidavit," an affidavit "riddled with inadmissible" material. *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999).

The information in the declaration now challenged by the Defendants is certainly the type of information shared between attorneys and clients during the course of representation. Indeed, Plaintiffs' counsel would be remiss, and likely committing professional malpractice, if they had not documented this information in their file before initiating representation and filing the underlying proceedings and this lawsuit. To strike the declaration on this basis would be unreasonable. Moreover, Defendants have not contested any of these facts during the underlying or these proceedings; indeed, the DOE has paid pendency based on these familial relationships, the known disabilities of these Students, and pursuant to the contracts. As such, even if the Court

3

deems it necessary to strike the declaration, these facts should be deemed admitted based on Defendants' actions alone.

## II.    PLAINTIFFS' CLAIMS ARE NOT MOOT AND SHOULD BE ADJUDICATED

DOE's continued refusal to comply with its obligations under the IDEA to fund Plaintiff-Students' pendency placements represent a systemic failure. This type of prolonged non-compliance has been deemed actionable under 42 U.S.C. § 1983, as cases have recognized that failing to provide mandated educational services violates federally protected rights. *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 456 (2d Cir. 2015) (holding that school district's failure to provide stay-put services is actionable under 42 U.S.C. § 1983).

The procedural rights guaranteed under the IDEA must be rigorously enforced to protect students from disruptions in their educational services. Systemic delays and non-compliance with funding obligations have been deemed violations of students' constitutional rights under the Due Process Clause of the Fourteenth Amendment. Under 42 U.S.C. § 1983, federal district courts have subject-matter jurisdiction to enforce administrative decisions rendered under IDEA. *Rutherford v. Fla. Union Free Sch. Dist.*, 2019 U.S. Dist. LEXIS 55971 (quoting *A.T. v. New York State Educ. Dep't*, No. 98-CV-4166 (JG), 1998 WL 765371, at *7, 9–10 (E.D.N.Y. Aug. 4, 1998)); *see also Y.S. on behalf of Y.F.*, 2021 WL 1164571 (enjoining DOE to comply with IHO order). Given DOE's documented history of such failures and its continuing failures regarding Plaintiff-Students here, summary judgment in favor of Plaintiffs and against DOE is not only appropriate but necessary to ensure the enforcement of Plaintiffs' statutory rights.

### A.    DOE Has Not Fully Funded H.C.'s Pendency Placement

DOE argues that H.C.'s claims are moot because the pendency program was fully funded, because it paid rates set forth by the prior school year's FOFD rather than paying the value of the

4

current school year's providers' contracts. [ECF No. 49, pp. 12-15]. The IDEA's pendency provision is an "automatic preliminary injunction" designed to preserve the *status quo*. See *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). In refusing to pay the full value of the pendency placement, the Defendants did not preserve H.C.'s educational *status quo* and violated Plaintiff's rights under the IDEA.

The Second Circuit has emphasized that the purpose of the pendency provision is to maintain stability for the child during the administrative and judicial review process. *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 511, 520 (2d Cir. 2020). Partial payments of pendency placements have been held to result in changes in placement which violate the "stay put" provision. *See, e.g.*, Application of a Student with a Disability, Appeal No. 24-624 (holding that "the IHO erred in ordering the district to fund the student's [2024-2025] pendency at iBRAIN at the 2023-24 contract rate because by not ordering full funding of the student's pendency services, the IHO strayed from the student's then-current educational placement). This Court should find that DOE's partial payment of H.C.'s pendency violates the IDEA.

**B.    DOE Failed to Fund A.F.'s Pendency Placement by Refusing to Pay for Nursing Services**

DOE's contention that nursing is not part of A.F.'s last agreed-upon placement ignores that A.F.'s medical needs materially changed after the initiation of this litigation, such that A.F. required nursing services, as provided for in the January 2024 nursing agreement. That agreement was executed precisely because A.F.'s disability developed in a manner requiring nursing support, and subsequent administrative determinations confirmed that nursing is now a recognized component of A.F.'s program. In the 2024-2025 school year, both the Impartial Hearing Officer in FOFD Decision No. 277101 and the State Review Officer in SRO Decision 24-604 expressly awarded nursing services to A.F., thereby incorporating nursing into the pendency baseline. DOE's reliance

5

on the earlier FOFD cited in ECF No. 43-8 is incomplete, as pendency attaches to the most recent unappealed administrative order defining the student's program, not an outdated determination that does not reflect current needs. DOE's February 2024 IEP, which purported to provide nursing "as needed," is not compliant with state regulations requiring clear and enforceable mandates for related services; such vague language cannot substitute for the explicit nursing services ordered by the IHO and SRO. While Plaintiffs did not seek specific relief for nursing costs in the original complaint or in the notice of motion for summary judgment in the instant case, DOE's obligation to fund nursing services arises independently from the subsequent administrative determinations, as pendency is self-executing once nursing is incorporated into the program. DOE's reliance on *Donohue* and *Chaperon* is misplaced, as those cases denied reimbursement where the administrative orders *did not* include the disputed service, whereas here the subsequent FOFD and SRO decisions *do include nursing*. DOE cannot selectively cite earlier orders while ignoring later binding determinations that expand the student's entitlement. Accordingly, DOE's refusal to fund nursing services leaves an outstanding obligation that persists, notwithstanding the scope of the original pleadings, and summary judgment in DOE's favor on this issue must be denied.

> ### C.    Plaintiffs' Claims for Late Fees and Interest Are Justiciable

Plaintiffs are seeking all costs and fees arising from the contracts for the pendency placement including late fees and interest. Defendants had an obligation to implement Student-Plaintiffs' pendency placement as of the filing of the DPCs in July 2023. At no point in Defendants' Memorandum of Law do they dispute that Plaintiff-Students' pendency placements were at iBRAIN. Nonetheless, Defendants admitted that they began "processing" D.O.'s pendency only after a pendency order was entered. [ECF 49, ⁋ 8]. The Defendants admit that they "processed" A.F.'s pendency payments months later only *after* the FOFD was issued, many months after the pendency order was issued. [ECF No. 49, ⁋ 27]. The Defendants never provided the Court with

specific dates as to when the payments were processed or made. Accordingly, Defendants' own conduct is the catalyst for the instant action and has caused late fees and interest to accrue, and continue accruing, under the applicable contracts. As such, Plaintiffs are contractually liable for those fees and the amount for which Plaintiffs can be held liable increases with each day of DOE's unlawful inaction. Accordingly, Plaintiffs' claims for late fees and interest incurred *as a result of* DOE's own failure to fully and timely issue payments for pendency are clearly justiciable.

## III.   DOE IS RESPONSIBLE FOR DIRECTLY FUNDING THE CONTRACTUAL AMOUNTS DUE AND OWING, INCLUDING LATE FEES AND INTEREST

### A.    Contractual Late Fees and Interest are Recoverable as a Matter of Law

Defendants' argument that late fees or interest are not recoverable as a matter of law [ECF No. 49, p. 17] misapplies IDEA enforcement and disregards precedent. While not a direct signatory to the providers' contracts, the DOE's obligation to fund or reimburse appropriate private pendency placements necessarily binds it to the reasonable and customary terms of those contracts.

Recoverable costs under IDEA are not limited solely to tuition but may include additional financial burdens imposed by a school district's failure to make timely payments. IDEA's "make-whole" remedy ensures full compensation for expenses incurred because of a school district's failure to provide FAPE, including foreseeable and contractually agreed-upon charges like late fees and interest. See *Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773, 788 (1st Cir. 1984), *aff'd sub nom. Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985) (affirming that reimbursement should cover all costs parents incur in providing appropriate education). In *JP ex-rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 641 F. Supp. 2d 499 (E.D. Va. 2009), the Court determined that the plaintiffs there were entitled to a reasonable interest rate as compensation for tuition payments made with their credit cards, emphasizing that the court has broad discretion to award appropriate relief. *Id.* at 506; *see also*

*M.S. ex-rel. Simchick v. Fairfax Cnty. Sch. Bd.*, 553 F.3d 315, 325 (4th Cir. 2009) (district courts have broad discretion in IDEA awards and such awards should be equitable).

The tuition, transportation, and, where applicable, nursing service agreements for the 2023–2024 school year expressly outline the fees for late payments. [ECF Nos. 43-2, 43-3, 43-5, 43-6, 43-7, 43-9, 43-10, 43-11]. Given this Court's broad discretion under the IDEA to ensure that parents are not financially penalized for enforcing their child's right to a FAPE, DOE must be held responsible for the late fees and interest directly resulting from its own refusal to timely implement pendency under Section 1415(j).

The late fees and interest charged by the service providers are foreseeable, known to DOE, and result from DOE's persistent delays in funding the Students' pendency placements; indeed, they are in all contracts with iBRAIN, Sisters Travel, and B&H Nursing. Late fees and interest impose financial hardships on families, jeopardize students' access to uninterrupted education, and deprive students of *free* and appropriate education. DOE's continued delay in implementing automatic pendency placements undermines the IDEA's fundamental guarantee of uninterrupted educational services and imposes significant and unnecessary financial burdens on families who rely on these mandated payments. This Court should intervene to ensure that DOE fulfills its statutory and contractual obligations in a timely manner, as required by law.

Denying Plaintiffs' requests for reimbursement of these late fees and interest would effectively deprive them of the "free" component of a FAPE. DOE's delay in implementing automatic pendency placements has imposed financial hardship on Plaintiffs, making them liable for late fees and interest that would not have been incurred had DOE fulfilled its legal obligations in a timely manner. Preventing parents from recovering these additional costs after the final decision would render any relief obtained an "empty victory." *See Florence Cnty. Sch. Dist. Four*

*v. Carter By & Through Carter*, 510 U.S. 7, 12 (1993). Recently, in *Mendez v. Aviles-Ramos*, Judge McMahon rejected the DOE's position that it was not obligated to pay late fees and interest on transportation. 25-cv-1096-CM, Dkt. No. 45 at *8 n.3 (S.D.N.Y. Oct. 1, 2025). As the Court stated:

> Applying the relevant language from the [final administrative order], the Court finds that DOE must pay for late fees and interest arising from Plaintiff's Transportation Agreement with Sisters Travel. *The reason is that the plaintiff signed a contract to pay those amounts if they were incurred*.

*Id.* at 9. (Emphasis added).

Here, the DOE's failure to implement Plaintiff-Students' pendency in a *timely* manner resulted in the triggering of late fees and interest, therefore making DOE responsible for the late fees and interest. *See generally Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009) (discussing the broad equitable powers of courts in IDEA cases). Accordingly, this Court should follow Judge McMahon's reasoning and ruling in *Mendez* and order DOE to pay late fees and interest for tuition, transportation, and nursing, where applicable, because of its inexcusable delays. *See* 25-cv-01096-CM, Dkt. No. 45 at *8 n.3 (S.D.N.Y. Oct. 1, 2025).

**B.       The Exhaustion Defense Does Not Apply to Plaintiffs' Claims for Late Fees and Interest**

Defendants' argument that Plaintiffs' claims for late fees and interest are barred because Plaintiffs failed to raise the issue in the underlying administrative proceedings is without merit. It is settled that "where 'an action alleg[es a] violation of the stay-put provision,' such action 'falls within one, if not more, of the enumerated exceptions' to the IDEA's exhaustion requirement. *De Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 531 (2d Circ. 2020) (citing *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002). In this action, Plaintiffs are seeking redress here for DOE's violation of the stay-put provision, namely the payment of all

9

funds for the pendency placement.  DOE has not cited any authority for support that the exhaustion requirement applies.

Here, Defendants were aware of Plaintiffs' contractual obligations in early July 2023, when the Plaintiffs filed their DPCs. DOE's argument that Plaintiffs' claims should be barred because they did not raise them in the DPC's is without merit. [ECF No. 49, p. 18]. Each DPC seeks pendency placement including payment of tuition and related services pursuant to the contracts and advises the DOE that Plaintiff would seek recovery of "all related fees" in the event of litigation. [ECF Nos. 1-2, pp. 3, 9; 1-6, pp. 2. 9; 1-10, pp. 3, 10]. The various provider contracts specifically outlined the late fees and interest that could attach for delays in payment. [ECF Nos. Further, DOE's argument is belied by its own admission that "the DOE paid for the full school year [for H.C] as the agreement requires prepayment or the applicable late fees." [ECF No. 49, p. 21]. DOE cannot argue, on the one hand, that Plaintiffs failed to raise late fees as a potential claim and, then on the other hand, it was forced to prepay due to concerns about the late fees. The DOE was on notice that late fees might arise as an issue for failure or delayed payments of pendency.

Furthermore, Plaintiffs had no opportunity to address late fees in the underlying proceedings. The issue would not have been ripe to raise in the application for a pendency order. Further, Plaintiffs had obtained favorable rulings in the Pendency Order and, therefore, could not appeal those orders. *See, e.g.*, SRO Decision No. 24-543 (https://www.sro.nysed.gov/decision/2024/24-543) ("Generally, the party who has successfully obtained a judgment or order in his favor is not aggrieved by it, and, consequently, has no need and, in fact, no right to appeal") (quoting *Parochial Bus Sys., Inc. v. Bd. of Educ.*, 60 N.Y.2d 539, 544 (1983)); *Cosgrove v. Bd. of Educ.*, 175 F. Supp. 2d 375, 385 (N.D.N.Y. 2001) ("The administrative appeal process is available only to a party which is 'aggrieved' by an IHO's determination.").

As set forth above, exhaustion is not required when it would be futile. *See Murphy*, 297 F.3d at 199. In *W.B. v. Matula*, 67 F.3d 484, 494–95 (3d Cir. 1995), *abrogated by A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir. 2007), the Third Circuit, addressing the availability of money damages under the IDEA, cited the legislative history of 20 U.S.C. § 1415(f), House Report at 7, "excusing [the] § 1415(f) exhaustion requirement where 'the hearing officer lacks the authority to grant the relief sought.'" Nor is exhaustion required where adequate remedies are not reasonably available or where the wrongs alleged could not or would not have been corrected by resorting to the administrative hearing process. *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir. 2008). Here, it would have been futile for Plaintiffs to seek appeals requesting late fees and interest. The relief sought would have been deemed prospective, and unripe. As the Second Circuit held in *Mendez v. Banks*, 65 F.4th 56, 60 (2d Cir. 2023): "'A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (internal quotation marks and citations omitted in *Mendez*)). In *Mendez v. Banks*, the Court held that, because pendency obligations only remain so long as due process proceedings are pending, the Court could not award pendency for the entire school year. It reasoned: "Because we cannot now ascertain the future, we cannot assume that the DOE's legal obligation will continue through the remainder of the school year." *Id.* at 61.

Defendants' reliance on *Hidalgo v. Porter*, 2023 U.S. Dist. LEXIS 226812, *14 (S.D.N.Y. December 20, 2023) is misplaced. First, *Hidalgo* involved a claim for reimbursement for a *unilateral placement*, not a claim that DOE violated the *pendency provision*. *Id.* at *5-6. Second, the Court noted with significance that the DOE had processed the requested reimbursement payments in a timely manner, less than two weeks after required documentation was provided by

the plaintiff. *Id.* at *9, 14. Thus, *Hidalgo* is distinguishable and offers no support for DOE's contention.

Simply put, because Plaintiffs need not exhaust administrative remedies to enforce their pendency rights in federal court, Plaintiffs' claims are not barred. Accordingly, DOE should be ordered to pay late fees and interest which accrued due to DOE's failure to timely fund the Students' pendency placements.

**C.    Enforcing Contractual Late Fees and Interest Upholds Public Policy**

Enforcing these contractual provisions serves a crucial public policy objective: incentivizing the DOE to comply in a timely manner with its federal obligations under the IDEA to implement a disabled child's pendency placement, including funding and payment in the ordinary course. The timeframe here is well beyond the "ordinary course." As noted in the decision relied upon by DOE, *Hidalgo*, DOE is perfectly capable of processing payments under the IDEA within two weeks. *Hidalgo*, 2023 U.S. Dist. LEXIS 226812, *9, 14. DOE was aware of the Students' pendency placements, and the need to fund the same, as of early July 2023, when Plaintiffs filed there DPCs. DOE makes no argument that it contested the pendency placements. Pendency Orders were entered in August 2023. Yet, DOE made some pendency payments several months after—and some portions remain outstanding—without rhyme or reason. DOE did not describe is process for paying pendency or any type of timeline. Tellingly, DOE did not provide this Court with any information as to the dates that it did make actual payments. Instead, the only information DOE would provide to this Court regarding the actual payments made is such vague statements as:

- "DOE processed $96,465.00 in transportation costs and $154,580.00 in tuition costs pursuant to the pendency order [for D.O.]." [ECF 49, ¶ 8].
- "As of this writing, the DOE has paid all monies due and owing pursuant to the FOFD [for D.O.]." [ECF 48, ¶14].
- "As of this writing, the DOE has paid all monies due and owing per its pendency obligations [for H.C.]." [ECF No. 48, ¶21].

- "As of this writing, the DOE has paid all monies due and owing pursuant to *FOFD* [entered four months after the Pendency Order was entered] in [A.F.'s case]." [ECF No. 48, ¶27] (emphasis added).

Such vague statements indicate DOE's careless disregard for their pendency obligations, including timely funding disabled students' pendency placement/program. Moreover, Defendants contend that "any such late provision cannot be enforced without violating public policy. [ECF No. 49, p.19]. But Judge McMahon squarely rejected this very contention in *Mendez v. Aviles-Ramos*, holding that "[f]or this reason, Defendants public policy arguments are unavailing". *See* 25-cv-01096-CM, Dkt. No. 45 at *8 n.3 (S.D.N.Y. Oct. 1, 2025). There, as here, Defendants advanced the same public-policy theory asserted in their cross-motion for summary judgment. [ECF No. 49, at p.18-19]. The Court was unpersuaded in *Mendez*, and Defendants offer no basis for a different result in this case.

DOE has historically failed to timely process pendency payments pursuant to administrative orders. In *L.V. v. NYC DOE*, No. 03-CV-09917 (LAP), in December 2007, Advocates for Children and Milbank LLP, on behalf of the Class, entered into a settlement agreement with DOE which provides injunctive and compensatory relief to class members. The Settlement was approved on April 10, 2008. Under the settlement, the DOE is required to implement all impartial hearing orders within the timeframe stated in the order *or 35 calendar days of the date of the order if no time is specified*. Orders that require immediate action must be implemented within 7 business days. Furthermore, Judge Loretta A. Preska issued an order in that class action: "DOE's only lawful course of action is to implement those Orders, full stop." No. 03-CV-09917-(LAP), ECF No. 258 (February 18, 2021). Here, DOE clearly did not process the Pendency Orders in a timely fashion, running afoul of the *L.V.* settlement agreement.

DOE's failings go beyond the Students in this matter. On August 11, 2025, the plaintiffs in *L.V.* filed a letter with the court highlighting DOE's persistent failures to comply with the Stipulation and Agreement of Settlement entered in 2007, which required the DOE to meet specific benchmarks for implementing impartial hearing officers' orders and action items. Despite numerous court orders and the appointment of a Special Master, the DOE's compliance rates have deteriorated significantly. Recent audits have shown implementation rates as low as 4.3% for orders and 4.9% for action items in the quarter ending January 2024. This systemic failure has left thousands of special-needs students without timely access to legally mandated educational services, causing significant harm to students and their families. This case exemplifies DOE's ongoing inability to fulfill its obligations, despite clear directives and oversight.

If DOE can continue to delay payments without consequence, there is little incentive to promptly adhere to administrative orders and fulfill its obligations to children with disabilities. DOE's non-compliance is unacceptable and actionable, and its delays have threatened the Students' special transportation services with Sister's Travel. [ECF No. 1-8, 1-4, 1-12 (letters to each Plaintiff from Sisters Travel requiring balances to be paid or the company "may no longer be able to provide your child with transportation services"). *See generally G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 620 (3d Cir. 2015) (emphasizing that IDEA aims to prevent school districts from dragging their feet). Although DOE argues that awarding late fees would be detrimental to the taxpayers of New York, three of whom have brought this lawsuit, DOE conveniently overlooks that its own actions are far more costly to New Yorkers and created the need for this litigation. DOE can easily prevent any such burden on taxpayers by timely processing pendency payments. DOE's attempt to evade accountability for its actions and place blame on these Plaintiffs should not be condoned.

## **CONCLUSION**

For the reasons stated herein and in Plaintiffs' prior filings, the Court should grant Plaintiffs' Motion for Summary Judgment in its entirety, deny the Defendants' Motion for Summary Judgment, and order any such other relief as the Court deems just, proper, and equitable.

Dated: December 19, 2025
   New York, N.Y.

                              Respectfully submitted,
                              Liberty & Freedom Legal Group
                              *Attorneys for Plaintiffs*

               By: ____*/s/ Nicole Lancia*____
                     Nicole Lancia, Esq.

                     Liberty and Freedom Legal Group
                     105 East 34th Street, Suite 190
                     New York, N.Y. 10016
                     (646) 850-5035
                     nicole@pabilaw.org